## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

T.S. KAO, INC., d/b/a Lucky 7
Chinese Food; THE DINNER BELL
CAFÉ, INC.; BILL'S PIZZA PALM
SPRINGS; BILL'S GRILL 1, LLC;
individually and on behalf of all
others similarly situated

      Plaintiffs,

      v.

NORTH AMERICAN BANCARD,
LLC; GLOBAL PAYMENTS
DIRECT, INC.;

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:16-CV-4219-SCJ

## ORDER

This case appears before the Court Defendants' Motion to Strike the Amended

Complaint and Motion to Dismiss. Doc. No. [20].

## I.   LEGAL STANDARD

In considering a motion to dismiss, the Court must accept the well-pled factual

allegations of the complaint as true, but "conclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

Ordinarily, when "matters outside the pleading are presented to and not excluded

by the court [in a motion to dismiss], the motion must be treated as one for summary

judgment." Fed. R. Civ. P. 12(d); see also Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997). However, the Court may consider documents submitted along with a motion to dismiss without converting the motion into a motion for summary judgment if (1) the documents are central to Plaintiffs' claims, and (2) their authenticity is not challenged. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

## II.    ANALYSIS

Plaintiffs are merchants who used Defendants' credit-card-processing services, and purport to represent a class of such merchants. Doc. No. [19], pp. 8–9, ¶¶12–15; see also id. p. 38, ¶¶108–11. Plaintiffs argue that Defendants systematically, intentionally, and fraudulently over-billed merchants. They acknowledge that "the amount of any one merchants' [sic] losses from the inflated fees charged by Defendants is modest." Id. p. 37, ¶104. However, when aggregated, Plaintiffs assert that the amount in controversy in this dispute exceeds $5 million. Id. pp. 9–10, ¶18. Defendants argue that Plaintiffs cannot bring a class-action lawsuit, and thus the only jurisdictional basis for this case fails. See Doc. No. [20-1], pp. 2–3.

Defendant's motion turns on a provision in the Merchant Service Agreements — the contracts governing the relationship between Plaintiffs and Defendants at the core of this lawsuit. Section 25 provides, in part, that "any and all

2

disputes or controversies of any nature whatsoever" relating to the agreement or the relationship resulting therefrom will be resolved "on an individual basis without resort to any form of class action and not consolidated with the claims of any other parties." Doc. No. [19-1], p. 7, § 25. This language is clear as day.

According to the contracts as written, Plaintiffs cannot bring claims relating to the agreements in a class-action lawsuit. See Terry v. State Farm Fire & Cas. Ins. Co., 269 Ga. 777, 778, 504 S.E.2d 194, 196 (1998) (if a contract "is clear and unambiguous, the terms of the agreement are controlling"). Indeed, Plaintiffs make no argument that the above-quoted language is ambiguous. Instead, they contend "the waiver is unenforceable" or, in the alternative, that a determination of whether the waiver is enforceable should wait until summary judgment. Doc. No. [23], p. 2.

## A.   Is the Waiver an Exculpatory Clause?

Plaintiffs contend that the class-action waiver is unenforceable because it is an exculpatory clause. Doc. No. [23], pp. 7–14. Under Georgia law, an exculpatory clause is a provision in a contract that "severely restrict[s] remedies" or "waive[s] substantial rights." See Parkside Ctr., Ltd. v. Chicagoland Vending, Inc., 250 Ga. App. 607, 611, 552 S.E.2d 557, 562 (2001); Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc., 227 Ga. App. 641, 644, 490 S.E.2d 124, 128 (1997). Such clauses are not unenforceable per se, but in order to be enforceable must be "explicit, prominent, clear

3

and unambiguous." Imaging Sys. Int'l, 227 Ga. App. at 644–45 (quoting Dep't of Transp. v. Arapaho Const., Inc., 180 Ga. App. 341, 343, 349 S.E.2d 196, 198 (1986)).

If the class-action waiver at issue is an exculpatory clause, there can be no doubt that it would be unenforceable. See Doc. No. [19-1], p. 7, § 25; see also Parkside Ctr., 250 Ga. App. at 611 (holding that exculpatory clause was unenforceable because, inter alia, it "ha[d] no separate paragraph heading and ha[d] typeface the same size as all of the surrounding numbered paragraphs"). However, Plaintiff presents no authority suggesting that a class-action waiver constitutes an exculpatory clause under Georgia law, and the Court has found none. The provision simply prevents Plaintiffs from bringing a class-action lawsuit, but does not limit the claims they can bring or their remedies.

It does not severely restrict remedies by, for example, limiting the kind or amount of damages Plaintiffs can recover. See, e.g., Imaging Sys. Int'l, 227 Ga. App. at 644--45 (provision prohibiting recovery of lost profits was a severe restriction on remedies); Parkside Ctr., 250 Ga. App. at 611 (provision at issue limited "any recovery to the limited partnership's interest in the shopping center"). Nor does it waive Plaintiffs' substantial rights by, for example, explicitly exempting Defendants from liability for certain claims. See, e.g., Arapaho Const., 180 Ga. App. at 342–43

4

(holding that a provision was an exculpatory clause because it released the defendant from liability in "*any* breach of contract situation") (emphasis in original).

Plaintiffs' cited authority is unavailing. They cite <u>Neighborhood Assistance Corp. v. Dixon</u>, 265 Ga. App. 255, 593 S.E.2d 717 (2004); <u>Holmes v. Clear Channel Outdoor, Inc.</u>, 284 Ga. App. 474, 644 S.E.2d 311 (2007); and several other cases for the proposition that an exculpatory clause may not relieve liability for gross negligence or willful or wanton conduct. Doc. No. [23], pp. 10–11. But Plaintiffs' must first demonstrate that the class-action waiver *is* an exculpatory clause. As noted above, it is not because it does not severely restrict Defendants' liability or Plaintiffs' remedies, much less restrict liability for willful or wanton conduct. Plaintiffs' better argument is that the class-action waiver effectively denies them a remedy because "it would make no economic sense for them to proceed with this case" on an individual basis. <u>See id.</u> p. 8–9. However, they recognize that "no reported Georgia decision has addressed whether a class[-]action waiver is an exculpatory clause." <u>Id.</u> p. 10. The Court has found no authority, and Plaintiffs have cited none, for the novel proposition that a contractual provision can "effectively" be an exculpatory clause where it does not actually restrict the claims a plaintiff can bring or the remedies the plaintiff can receive. But this does not end the inquiry. Plaintiffs' argument that the waiver *de facto* denies them a remedy warrants further consideration.

5

**B.**   <u>**Is the Waiver Unconscionable?**</u>

Plaintiffs' other argument that the class-action waiver is unenforceable is based on their contention that the provision is unconscionable. Doc. No. [23], pp. 14–22. The Georgia Supreme Court has explained that contractual provisions are to be analyzed for both procedural and substantive unconscionability. <u>NEC Techs., Inc. v. Nelson</u>, 267 Ga. 390, 392, 478 S.E.2d 769, 772 (1996). Factors for determining procedural unconscionability include "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." <u>Id.</u> at 391–92.

In deciding if a provision is substantively unconscionable, "courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." <u>Id.</u> at 392. For a contractual provision to be unenforceable, courts generally require "a certain quantum" of both procedural and substantive unconscionability. <u>Id.</u> at 394 n.6. Defendants argue that, even if "there are factual disputes about procedural unconsionability," the Court can rule the waiver

6

enforceable because "Plaintiffs can identify no factual dispute about substantive unconscionability." Doc. No. [24], pp. 15–16.[1]

Courts deciding if a contractual provision is substantively unconscionable "look[ ] to the contractual terms themselves." NEC Techs., 267 Ga. at 392. The particular provision in dispute here states that "any and all disputes or controversies of any nature whatsoever" relating to the agreement will be resolved "on an individual basis without resort to any form of class action." Doc. No. [19-1], p. 7, § 25. Plaintiffs argue that this provision "effectively bars merchants from *ever* successfully vindicating their legal claims" due to " the small amounts at stake on an individual basis, the inability of merchants to recover their attorneys' fees." Doc. No. [23], p. 16 (emphasis in original). They point to the "controlling case" of Dale v. Comcast Corp., 498 F.3d 1216 (11th Cir. 2007). Doc. No. [23], p. 17. In Dale, the Eleventh Circuit acknowledged "that public policy supports the need for class actions for certain types

---

[1] Defendants argue that Plaintiff T.S. Kao, Inc. cannot argue procedural unconsionability because its representative "admitted that she failed to read the Agreement." Doc. No. [24], p. 14 n.9. In support of this argument, they cite to a declaration submitted in response to an earlier motion to dismiss. Id. However, the Court cannot consider a document submitted along with a motion to dismiss without converting the motion into a motion for summary judgment unless the document is "central to Plaintiffs' claims." See Day, 400 F.3d at 1276. Unlike the contracts themselves, the declaration does not meet this criterion. Plaintiffs are correct that the Court cannot decide the issue of procedural unconsionability based solely on the allegations in the complaint and the contracts themselves. See NEC Techs., 267 Ga. at 391–92. But there must still be some "quantum" of substantive unconsionability in order for the class-action waiver to be unenforceable. Id. at 392.

7

of claims." 498 F.3d at 1220. One such situation is where the "cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great" and the claims did not allow for provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers." See id. at 1224. In such circumstances, the Eleventh Circuit held that a class-action waiver is unconscionable under Georgia law. Id.

In reply, Defendants argue that Dale has been "abrogated." Doc. No. [24], pp. 6–7. Their argument is based on the fact that the Dale Court analyzed the class-action waiver in an arbitration agreement using Georgia law. 498 F.3d at 1219. The Supreme Court subsequently held that State laws outright prohibiting class-action waivers in arbitration agreements were preempted by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742 (2011). But because the class-action waiver in this case was not part of an arbitration agreement, Georgia law is not preempted by the FAA. Thus, while the holding of Dale as to arbitration agreements may have been impacted by the Concepcion decision, the analysis of the unconscionability of class-action waivers under Georgia law performed by the Dale Court was not impacted in any way.

8

Defendants go on to argue that, even if <u>Dale</u> and its progeny apply, the Court should still grant their motion because Plaintiffs either can recover attorneys' fees or could have asserted claims that would have entitled them to attorneys' fees. Doc. No. [24], pp. 8–12. Indeed, the <u>Dale</u> Court explained that class-action waivers are enforced under Georgia law when a plaintiff's claims provided "for the recovery of attorneys' fees and/or expert costs should the plaintiff prevail." 498 F.3d at 1221; <u>see also Jenkins v. First Am. Cash Advance of Ga.</u>, 400 F.3d 868, 878 (11th Cir.2005) (holding that a class-action waiver was not substantively unconscionable because the plaintiffs' claims provided for the recovery of attorneys' fees); <u>Hopkins v. World Acceptance Corp.</u>, 798 F. Supp. 2d 1339, 1349 (N.D. Ga. 2011) (same).

The dispute is whether Plaintiffs can recover attorneys' fees. No basis for recovery appears on the face of the complaint, but Defendants offer two statutes that they argue might allow Plaintiffs to recover attorneys' fees: (1) O.C.G.A. § 13–6–11 and (2) the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-14-1 *et seq*. Doc. No. [24], pp. 9–13. The Court addresses each of these statutes in turn.

Defendants persuasively argue that, if Plaintiffs succeed on their fraud claim, they would automatically meet the "bad faith" requirement of § 13–6–11. <u>See</u> Doc. No. [24], p. 9; <u>see also DeKalb Cty. v. McFarland</u>, 231 Ga. 649, 651 (1974); <u>St. Paul Fire</u>

9

& Marine Ins. Co. v. Clark, 255 Ga. App. 14, 24 (2002) ("Because the jury was authorized to find fraud, it was also authorized to find bad faith."). But § 13–6–11 states that "the jury *may* allow" an award of litigation expenses if the defendant acted in bad faith. O.C.G.A. § 13–6–11 (emphasis added).[2] Thus, the cases relied on by Defendants are distinguishable because the claims in those cases entitled the plaintiffs to an *automatic* award of attorneys' fees. See Cappucitti v. DirecTV, Inc., 623 F.3d 1118, 1126–27 (11th Cir.2010) (*per curiam*) (plaintiff could have brought a claim under the Georgia Fair Business Practices Act ("GFBPA"), which would have automatically entitled him to an award of attorneys' fees); Dale, 498 F.3d at 1223 n.12 (distinguishing Eleventh Circuit cases where the plaintiffs brought claims that provided "for the automatic award of attorneys' fees and costs to a prevailing plaintiff"); see also Honig v. Comcast of Georgia I, LLC, 537 F. Supp. 2d 1277, 1287–88 (N.D. Ga. 2008) (plaintiff's "first and primary claim" was brought under the GFBPA).

Indeed, the Dale Court held that "the potential recovery of attorneys' fees and litigation costs under O.C.G.A. § 13–6–11 does not provide the same incentive for an attorney to represent an individual plaintiff as [an] automatic, or likely, award of fees

---

[2] Section 13–6–11 also requires that the plaintiff specifically plead and make prayer for the recovery of litigation expenses. O.C.G.A. § 13–6–11. Plaintiffs did not do this in their amended complaint. See Doc. No. [19]. This is problematic, but the Court need not address the issue because, as will be discussed below, § 13–6–11 is too shaky a ground for the recovery of attorneys' fees in this case.

AO 72A
(Rev.8/82)

and costs available to a prevailing plaintiff." 498 F.3d at 1223. Defendants are correct that the state law claims in Dale were not intentional torts. See id. at 1217. The district court in Honig distinguished Dale on this ground, stating in *dicta* that the plaintiff was "highly likely" to recover attorneys' fees under § 13–6–11 if she succeeded on her fraud claim.  537 F. Supp. 2d at 1288. But in this case, the Court concludes that § 13–6–11  is not a sufficiently sound basis to decide that, as a matter of law, the class-action waiver is enforceable.

First, even if Plaintiffs *per se* proved bad faith by succeeding on their fraud claims, a decision to award attorneys' fees under § 13–6–11 is completely discretionary. O.C.G.A. § 13–6–11; In re Pervis, 512 B.R. 348, 384 (Bankr. N.D. Ga. 2014). Second, even if a jury or a court decided to award litigation expenses under § 13–6–11, the amount of the award would also be discretionary and based only on those claims that involved bad faith.  See In re Pervis, 512 B.R. at 384. Where the recovery of attorneys' fees is a matter of discretion, as with § 13–6–11, the likelihood of obtaining an award of "hundreds of thousands of dollars or more" when an individual plaintiff "recovered less than a thousand dollars [is] remote at best." See Doc. No. [24], p. 21; see also Dale, 498 F.3d at 1223.

Defendants next argument is that because Plaintiffs could have brought a Georgia RICO claim, the Court should conclude that the class-action waiver is

enforceable because Plaintiffs would automatically recover attorneys' fees under such a claim. Doc. No. [20-1], pp. 20–22. But Plaintiffs have not brought a Georgia RICO claim. Inserting one into their complaint runs afoul of the adage that the plaintiff is master of her complaint and "selects the claims that will be alleged in the complaint." United States v. Jones, 125 F.3d 1418, 1428 (11th Cir.1997). Recognizing this problem, Defendants point to Cappuciti, arguing that the case held a class-action waiver is enforceable if "attorney's fees were available for claims that *could have been brought* but were not asserted in the plaintiff's complaint." Doc. No. [20-1], p. 19.

But the specific language used in Cappuciti is essential. The Eleventh Circuit held that district courts must consider all the remedies available to a plaintiff under Georgia law "*at the moment*" a contract was formed in deciding whether a provision in the contract is unconscionable. Cappuciti, 623 F.3d at 1126 (emphasis in added). This is because unconscionability is decided based on "the circumstances existing at the time of the making of the contract." Id. (quoting NEC Techs., 267 Ga. at 391).

Here, a Georgia RICO claim would not have arisen "at the moment" the contract was formed, and thus the remedies the statute provides were not available to Plaintiffs. See Cappuciti, 623 F.3d at 1126. Plaintiffs were quite happy with the contracts they signed, because the contract spelled out "in clear, unambiguous terms" what Plaintiffs would be charged if they agreed "to enroll in Defendants' services and

12

how such charges [would] be calculated." See Doc. No. [19], p. 16, ¶40. The allegations in the complaint are that *after* the contract was formed Defendants systematically overcharged Plaintiffs. See id. pp. 17–27, ¶¶44–69.

It is possible that these actions would constitute "a pattern of racketeering activity." See O.C.G.A. § 16-14-4(a); see also id. § 16-14-3(5)(A)(xii); id. § 16-8-3. But courts generally will not ascribe to a plaintiff "a potential claim for relief that has not been pleaded in her complaint." See Jones v. DirecTV, Inc., 381 F. App'x 895, 897 (11th Cir. 2010). The only exception to this rule cited by Defendants is Cappucitti, which only applies to remedies that were available "at the moment" a contract was formed. Cappucitti, 623 F.3d at 1126; see also Barkwell v. Sprint Commc'ns Co., L.P., 2012 WL 112545, at *5 (M.D. Ga. Jan. 12, 2012) (noting that Cappucitti only applies to a remedy "available at the time that the plaintiff entered into the allegedly unconscionable contract, which is the determinative moment for determining the unconscionability of the agreement").

Because this case involves Plaintiffs whose claims will only allow a "negligible amount of recovery" and do not provide an automatic or likely recovery of attorneys' fees, the Court cannot agree that the class-action waiver is enforceable as a matter of

13

law. See Dale, 498 F.3d at 1221.[3] The fact that Plaintiffs might have been able to bring a Georgia RICO claim does not change this analysis because the remedies provided by the Georgia RICO statute were not available at the time the contract was formed. Cf. Cappucitti, 623 F.3d at 1126.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike the Amended Complaint and Motion to Dismiss (Doc. No. [20]) is **DENIED**.

**IT IS SO ORDERED,** this ____14th____ day of December, 2017.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs also argue that, even if the class-action waiver is enforceable, their class action could survive based on a rescission theory. Doc. No. [23], pp. 23–25. Because the Court holds that the waiver is not necessarily enforceable, as a matter of law, the Court need not reach this argument.

AO 72A
(Rev.8/82)