# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

T.S. KAO, INC. d/b/a LUCKY 7
CHINESE FOOD, THE DINNER
BELL CAFÉ, INC., BILL'S PIZZA
PALM SPRINGS, and BILL'S GRILL
1 LLC, individually and on behalf of all
others similarly situated,

          Plaintiffs,

      v.

NORTH AMERICAN BANCARD,
LLC and GLOBAL PAYMENTS
DIRECT, INC.,

          Defendants.

Case No. 1:16-cv-04219-SCJ

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## FOR JUDGMENT ON THE PLEADINGS

Plaintiffs' Amended Complaint should be dismissed on the pleadings because (1) Plaintiffs have failed to comply with the contractual notice provision requiring them to give written notice of their claims within 90 days; (2) the breach of contract claim is barred by the voluntary payments doctrine, and Plaintiffs have waived their fraud claims by making payments with full knowledge of the facts; and (3) Plaintiffs' unjust enrichment claim and declaratory judgment claim are not properly plead, since Plaintiffs are suing on an admitted contract and the rights

between the parties have already accrued. Accordingly, Defendants request that the Court enter judgment on the pleadings in their favor.

## I.    INTRODUCTION

Plaintiffs are merchants who seek to recover claimed losses resulting from Defendants' alleged overcharging for credit card processing and related merchant services. Consolidated Amended Class Action Complaint ("Compl."), ¶ 8-11. Specifically, Plaintiffs allege that North American Bancard, LLC (the merchant services provider) ("NAB") and Global Payments Direct, Inc. (the payment processor) ("Global") breached merchant service agreements (the "Merchant Agreements") with Plaintiffs and defrauded Plaintiffs by charging fees that were not authorized by those agreements.

Plaintiffs' claims are totally barred by a provision in the Merchant Agreements that requires Plaintiffs to give **written notice within 90 days** (at the latest) of any claim that a charge is unauthorized. *See, e.g.*, Dkt. No. 19-1, at 5, ¶ 12. The Merchant Agreements expressly provide that any claim as to which this notice is not given is waived. *Id.* Satisfaction of this notice requirement is an enforceable, absolute condition precedent to Plaintiffs asserting their claims. Plaintiffs do not allege, and cannot allege, that they provided the required written notice as to any charge, barring their claims.

Anticipating Defendants' invocation of this defense, Plaintiffs affirmatively plead that this notice provision is unenforceable. Compl., ¶ 193(c). That assertion fails as a matter of law. These provisions are routinely enforced under Georgia law. Indeed, Judge Cohen enforced a materially similar provision in another card processing fee case less than two months ago, dismissing a lawsuit brought by these same plaintiffs' lawyers against an NAB competitor. *See Cobra Tactical, Inc., v. Payment Alliance Int'l Inc., et al.*, No. 1:17-CV-1827-MHC (N.D. Ga. Jan. 4, 2018) (attached as "Exhibit A"). Judge Evans, in another Northern District case, recently held that a plaintiff's failure to comply with a similar 90-day written notice provision completely barred its claims. *Triad Constr. Co. v. Robert Half Int'l, Inc.*, No. 1:13-CV-3581-ODE, 2016 WL 9051798 (N.D. Ga. Feb. 24, 2016), *aff'd,* 679 Fed. App'x 748 (11th Cir. 2017). The same holds true for Plaintiffs' claims.

Further, even if Plaintiffs' claims were not completely barred by the notice provision of their agreements, Plaintiffs' claims fail on the independent grounds of voluntary payment and waiver. As the merchant statements attached to Defendants' Answer demonstrate, Plaintiffs *accepted and paid* for Defendants' services for months—or, in Plaintiff Lucky 7's case, for years—while receiving written statements that included the *very same fees* they now seek to challenge. Plaintiffs' continued acceptance of the services and payment of these fees with full

knowledge of the facts is a voluntary payment barring the contract claims. It also constitutes a waiver of any fraud claim.

Finally, Plaintiffs' unjust enrichment and declaratory judgment claims fail on the pleadings. The entire basis of Plaintiffs' lawsuit is that they were charged in excess of their *contract* rights. Where a contract exists, unjust enrichment claims are barred as a matter of law. As to declaratory judgment, Plaintiffs allege no ongoing relationship with Defendants outside of this lawsuit, nor any future action they must take regarding Defendants. Plaintiffs are not entitled to declaratory relief for past conduct and plead no basis for declaratory relief.

## II.    LEGAL STANDARD

Each of these issues can be decided on the pleadings and the merchant statements attached to the Answer.[1] On a motion for judgment on the pleadings, the Court may consider the Complaint, the Answer, and exhibits attached thereto. *See Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (on a Rule 12(c) motion, courts consider the "substance of the pleadings"); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "Where there is a conflict between allegations in a pleading and

---

[1] Defendants also note that merchant statements for Plaintiffs Dinner Bell, Bill's Grill, and Bill's Pizza were attached to the initial complaint filed in *The Dinner Bell Café et al. v. North American Bancard, LLC*, Case No. 1:15-cv-03059 (the "Initial Action"), which was consolidated with this case.

exhibits thereto, it is well settled that the exhibits control." *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) (quoting *Tucker v. Nat'l Linen Serv. Corp.*, 200 F.2d 858, 864 (5th Cir. 1953)).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is decided under the same standard that governs a motion to dismiss under Rule 12(b)(6). *Roma Outdoor Creations v. City of Cumming, Ga.*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008). Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim if it appears that the plaintiff can prove no set of facts to support the claim. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is warranted "if the complaint lacks an allegation as to a necessary element of the claim raised." *Patel v. Patel*, 761 F. Supp. 2d 1375, 1378 (N.D. Ga. 2011). As discussed below, that is the case here.

## III.   ARGUMENT AND CITATION OF AUTHORITY

Plaintiffs purport to bring claims for breach of contract, fraudulent omission, fraudulent misrepresentation, and fraudulent inducement on behalf of two putative classes: (1) an "assessments class," composed of merchants allegedly charged greater access fees than those specified in their contracts or imposed by the card networks; and (2) a service-fee class,[2] composed of merchants allegedly charged service fees not specified in their contracts. Compl., ¶¶ 110, 111. Plaintiffs admit— and indeed allege—that a contract governs their claim. *See* Compl., ¶ 10 (describing this case as challenging fees which "violate the express terms of the parties' standardized form 'Merchant Service Agreement'"). Although Defendants deny any breach of the Agreements, Defendants have admitted that the parties' relationship is governed by contract.[3] Under Georgia law, as explained in more detail below, because a contract governs the parties' relationship, Defendants may raise defenses based on the contract's terms to Plaintiffs' contract and fraud claims.

---

[2] Plaintiffs refer to these service fees as "junk fees," seemingly to prejudice the Defendants and divorce the fees from the reasons they are imposed. Defendants object to that prejudicial label, and refer to these charges by the more neutral term, "service fees."

[3] While NAB previously denied being a party to the Merchant Agreements, it has since admitted that it is a party. *See* Answ., ¶ 30. As parties to the agreements, both Global and NAB may assert contractual defenses against Plaintiffs' claims.

### A. The 90 day notice provision in the Merchant Agreement bars both the breach of contract and fraud claims.

The Merchant Agreement requires that written notice of a claim be given within a set time period or the claim is waived:

> It is agreed that in no event will Global Direct or Member be liable for any claim, loss, billing error, damage, or expense caused by Global Direct's or Member's performance or failure to perform hereunder which is not **reported in writing** to Global Direct by Merchant **within 60 days** of such failure to perform or, in the event of a billing error, **within 90 days** of the date of the invoice or applicable statement. **Merchant expressly waives any such claim that is not brought within the time periods stated herein**.

Dkt. No. 19-1, at 5, ¶ 12 (emphasis added). This exact provision is present in the Merchant Agreements executed by *all* named Plaintiffs. *See* Dkt. No. 19-2, at 5, ¶ 12; Dkt. No. 19-3, at 5, ¶ 12; Dkt. No. 19-4, at 5, ¶ 12; Dkt. No. 19-5, at 5, ¶ 12.[4]

Nowhere in the complaint have Plaintiffs alleged that they provided written notice of any of their claims. Nor can they argue that this failure is excused by ignorance, as the billing information that forms the basis of their complaint was set forth in each of their monthly statements. *See* Dkt. Nos. 30-1, 30-2, 30-3, 30-4 and Section III.B., *infra*. By failing to provide written notice within 90 days, Plaintiffs have waived these claims and they should be dismissed. *See Cobra Tactical, Inc.,*

---

[4] Although NAB is not specifically named in the notice provision, Plaintiffs have affirmatively pled that NAB is a party to the contract, has breached the contract, and that it drafted the term at issue. *See* Compl. ¶¶ 70-74 (alleging that the "Defendants" "buried" contract terms in an attempt to limit "themselves" from liability."). Thus, Plaintiffs affirmatively plead that the notice provision applies to NAB.

*v. Payment Alliance Int'l Inc.*, No. 1:17-CV-1827-MHC (N.D. Ga. Jan. 4, 2018) (Cohen, J.) (enforcing materially similar notice provision to dismiss claims bought by these same plaintiffs' lawyers against an NAB competitor).

### i. The 90 day notice provision is enforceable under Georgia law.

Plaintiffs plead that the 90 day notice provision in unenforceable and unconscionable, but the case law rejects Plaintiffs' argument. Georgia courts have regularly enforced notice provisions, finding that the failure to provide written notice completely bars a claim. *See e.g., See Pillar Dev., Inc. v. Fuqua Constr. Co.,* 284 Ga. App. 858, 860 ("Where a contract contains provisions requiring written notice of a claim for breach, '[t]he failure to give notice as required or to show waiver by [the party entitled to notice] is an independent bar to the maintenance of a successful cause of action on the contract.'" (quoting *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363, 369 (1973))). *See also Triad Constr. Co. v. Robert Half Int'l, Inc.*, No. 1:13-CV-3581-ODE, 2016 WL 9051798, at *4 (N.D. Ga. Feb. 24, 2016) (11th Cir. 2017) ("[T]o the extent that [Plaintiffs] argues that a 90-day notice period is *per se* unreasonable or unconscionable, its legal argument is without support.") *aff'd* 679 Fed. App'x 748.

Judge Cohen recently rejected this argument and enforced a materially similar 90 day notice provision, stating that "[s]tate and federal courts in Georgia have upheld similar notice requirements that completely bar a cause of action

under a contract when not fulfilled." *See Cobra Tactical, Inc., v. Payment Alliance International Inc.,* No. 1:17-CV-1827-MHC, at 14 (N.D. Ga. Jan. 4, 2018). *Cobra Tactical* was brought by one of the lead attorneys in this case. Global was also a defendant in *Cobra Tactical*, which was brought against Global and against a competitor of NAB. As in this case, plaintiffs in *Cobra Tactical* alleged a breach of a merchant agreement for fees related to card-processing services. And, as in this case, the *Cobra Tactical* plaintiffs argued that the notice provision was unenforceable "as it is exculpatory, unconscionable, and vague." *Id.* at 12. In response, Judge Cohen cited multiple Georgia cases enforcing such provisions and held that "under Georgia law, the clause is not exculpatory or substantively unconscionable." *Id.* at 14-15 (citing *OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 670 (11th Cir. 2012) ("notice provisions expressly made conditions precedent to coverage are valid and must be complied with unless there is a showing of justification"); *Triad Constr. Co.,* 2016 WL 9051798, at *4 (notice provision was not unconscionable and could be enforced); *Pillar Dev., Inc. v. Fuqua Const. Co.*, 284 Ga. App. 858, 860 (2007) (written notice requirement was valid); *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 369 (1973) ("The failure to give notice as required . . . is an independent bar to the maintenance of a successful cause of action on the contract.")). Because plaintiffs in *Cobra Tactical* had not complied with the notice provision, their claims were

then dismissed. Defendants ask that this Court follow *Cobra Tactical*— and the other applicable Georgia cases—and dismiss these claims under the notice provision in these Plaintiffs' agreements.

### ii. The 90 day notice provision bars both Plaintiffs' contract and fraud claims.

By affirming the contract, Plaintiffs have subjected both their contract and tort claims to the 90 day notice provision. Georgia law recognizes that where a party affirms a contract, contractual defenses apply to *both* breach of contract and fraud claims. *See Hightower v. Century 21 Farish Realty,* 214 Ga. App. 522, 523-524 (1994), ("Because the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any defenses which may be based on the contract." ). In fact, the Eleventh Circuit, in affirming the district court's opinion in *Triad*, rejected an argument trying to limit contractual defenses to only breach of contract claims. *See* 679 Fed. App'x at 755 ("Triad's argument fails because the contract does not support the distinction between tort claims and contract claims that Triad seeks to read into it."). Here, Plaintiffs' fraud claims allege the same conduct that forms the basis of their breach of contract claims and is subject to all breach of contract defenses available to Defendants.

Because Plaintiffs failed to give the required written notice, Plaintiffs have waived their fraud and contract claims and these claims should be dismissed.

**B. Alternatively, Plaintiffs have waived their service-fee claims by continuing to pay for, and receive services under, the Merchant Agreements.[5]**

**i.   The voluntary payment doctrine bars the service-fee claims.**

Plaintiff Lucky 7 alleges it received services from Defendants from 2013 to 2016. Compl., ¶ 12. Plaintiffs Dinner Bell, Bill's Pizza and Bill's Grill received services from Defendants for nine months, from April 2013 to December 2013. Compl., ¶¶ 13-15. Each month, each Plaintiff received a statement detailing the costs and fees charged by Defendants, including the complained of service fees. *See* Dkt. Nos. 30-1, 30-2, 30-3, 30-4. By continuing to use Defendants' services with, at minimum, constructive knowledge of the now-complained-of service fees, Plaintiffs have waived these claims.

The voluntary payments doctrine, codified at O.C.G.A. § 13-1-13, bars a plaintiff from recovering payments made "where all the facts are known and there

---

[5] This alternative argument is asserted only as against the so-called "Junk Fee," or service fee, class claims, and not against the "Assessments Class," as defined by Plaintiffs. The Assessments Class is limited to putative class members who paid fees in excess of amounts *established by the card brands*. *See, e.g.,* Compl. at ¶¶ 5(b), 110 (explaining that assessments are imposed by card networks, not the Defendants). The Service Fee Class is plead to include fees allegedly *established by the Defendants*. *See*, Compl. ¶ 54 and ¶¶ 49-53. As to the Assessments Class, Plaintiffs have alleged that they were fraudulently induced into paying assessments that exceeded the rates imposed by the card networks. Although Defendants reserve the right to argue waiver and voluntary payments as to the assessments as well as the service fees, for purposes of this motion for judgment on the pleadings, Defendants assert the alternative argument of waiver and voluntary payments as to the services fees only.

is no misplaced confidence and no artifice, deception or fraudulent practice" unless the payments fall into a specified exception.[6] Plaintiffs have the burden of showing this doctrine does not bar their claims. *See Progressive Elec. Servs., Inc. v. Task Force Constr., Inc.*, 327 Ga. App. 608, 618 (2014) ("[T]he party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply." (internal quotations omitted)). As the challenged service fees were listed on Plaintiffs' monthly statements, and they received statement messaging discussing the fees, Plaintiffs have not and cannot meet this burden.

The "PCI monthly non-compliance fee," ("PCI fee") complained of by all Plaintiffs, is a representative example.[7] *See* Compl., ¶ 49. A charge for this fee, labelled "PCI monthly non-compliance fee", appears under the heading "Other fees," on Lucky 7's statements **37 times**. *See* Dkt. No. 30-4. A representative example is reproduced below:

---

[6] The specific exceptions are: (1) "urgent and immediate necessity therefor;" (2) "to release person or property from detention;" or "to prevent an immediate seizure of person or property." O.C.G.A. § 13-1-13. Plaintiffs have alleged no facts in the complaint to suggest payment of the service fees was made pursuant to any of the exceptions.

[7] As set out in a merchant statement sent to Plaintiff Lucky 7, PCI compliance "HELPS PROTECT YOUR CUSTOMERS' ACCOUNT INFORMATION FROM SECURITY BREACHES AND IDENTITY THEFT" AND THE PCI NON-COMPLIANCE FEE WAS INCREASED "TO URGE ANY MERCHANT THAT HASN'T VALIDATED THEIR COMPLIANCE TO DO SO." *See e.g.,* Dkt. No. 30-4, at 146 (caps in original).

```
1                              CREDIT CARD MERCHANT STATEMENT
                               DATE: 07/31/2012    PAGE:  4
                               CODES: N   FORM: 9
                               MERCHANT: 00878$290316440
                               DBA: LUCKY 7 CHINESE FOOD


                      ~~~~~~~~~~~~~~~~~~~~
                 *----------*   OTHER FEES   *---------*
     CARD CHARGE DESCRIPTION            NUMBER      RATE       FEES
     FOR OUTLET 00000
     DISC       PER ITEM                   26     .1000        2.60
     DISC       PER ITEM                    2     .1500         .30
     VISA       PER ITEM                  553     .1000       55.30
     VISA       PER ITEM                  269     .1500       40.35
     MC         PER ITEM                  182     .1000       18.20
     MC         PER ITEM                   92     .1500       13.80
     CHGB 2954  MC NABU                   268     .0198        5.31
     CHGB 2964  VS APF-CR                 129     .0218        2.81
     CHGB       PER ITEM                    2     .0450         .09
          3009  BATCH HEADER FEE           31     .3500       10.85
          6025  PCI MONTHLY NON-COMPLIANCE FEE    1   4.9500   4.95
          6051  WWW.MYBIZPERKS.COM (GOLD)   1   11.9500       11.95
          6102  MONTHLY BASIC SERVICE FEE   0     .0000        9.95
                         TOTAL OTHER FEES :                  176.46

                 YOUR ACCOUNT HAS BEEN DEBITED :            619.44

                 *----- MESSAGES  -----*
```

Dkt. No. 30-4, at 24 (highlighting added). Lucky 7 also received statement messaging about PCI compliance **34 times.** *See* Dkt. No. 30-4. For example, on April 30, 2012, a message on Lucky 7's statement read:

> WE WILL BE ASSESSING AN ANNUAL PCI SERVICE FEE OF $99.00, WHICH WILL APPEAR AS A SEPARATE LINE ITEM ON YOUR JUNE 2012 MERCHANT STATEMENT, WHICH IS RECEIVED THE FIRST WEEK OF JULY 2012. ALL MERCHANTS THAT VALIDATE THEIR PCI COMPLIANCE BY JUNE 10, 2012 WILL RECEIVE A REDUCED FEE OF $79.00. **MERCHANTS THAT DO NOT MEET THIS REQUIREMENT WILL BE ASSESSED A MONTHLY NON-COMPLIANCE FEE OF $4.95 UNTIL THEIR ANNUAL PCI COMPLIANCE IS VALIDATED**.

Dkt. No. 30-4, at 9-10 (emphasis added; caps in original). Thus, Lucky 7 was on express notice, before the non-compliance fee was imposed, that it would be

charged the fee. It then in fact received a statement clearly stating the fee. And it then continued to use Defendants' services for years after imposition of the fee, voluntarily paying it month after month without complaint.[8]

Similarly, the PCI fee appeared on Plaintiffs Dinner Bell and Bill's Pizza's monthly statements three times; and on Plaintiff Bill's Grill's statements four times. *See* Dkt. No. 30-1, 30-2, and 30-3. Plaintiffs Dinner Bell and Bill's Pizza received statement messages about PCI compliance twice; Bill's Grill received them three times. *See* Dkt. No. 30-1, 30-2, and 30-3. Thus, as with Lucky 7, Plaintiffs Dinner Bell, Bill's Pizza and Bill's Grill each were on notice of the fee and voluntarily paid the fee after receiving that notice.

The same story repeats for *every service fee* challenged by Plaintiffs. The table below lists each of the challenged fees and shows where they appear on Plaintiffs statements[9]:

---

[8] Plaintiffs may argue that because the fees were deducted from their accounts by Defendants, rather than affirmatively paid by Plaintiffs, the voluntary payments doctrine does not apply. While Defendants are aware of no Georgia case law explicitly addressing this issue, the Northern District has applied the doctrine in at least one case where a defendant debited money from a plaintiff's account. *See Smith v. Orthalliance, Inc.*, No. 1:01-CV-2778-BBM, 2004 WL 5512959 (N.D. Ga. Jan. 9, 2004) (barring recovery of service fees under the voluntary payments doctrine where complaint alleged defendants collected fees by "'sweeping' the bank accounts of the [plaintiffs]"). In any event, Plaintiffs voluntarily continued to use Defendants services—and voluntarily continued to permit the debiting of their accounts—for months after receiving express notice of the fees.

[9] Some of these fees appear so frequently on the Plaintiffs statements that there is not room in this table to list all the record citations to their appearance. In the

*Dinner Bell*

| Fee | Number of Times on Statement | Exemplary Record Citation |
|---|---|---|
| Fixed Acquirer Network Fee | 5 | DKT 30-1, pg. 18 |
| PCI Monthly Non-Compliance Fee | 3 | DKT 30-1, pg. 31 |
| Annual PCI Service Fee | 1 | DKT 30-1, pg. 24 |
| Regulatory Fee | 1 | DKT 30-1, pg. 41 |

*Bill's Pizza*

| Fee | Number of Times on Statement | Exemplary Record Citation |
|---|---|---|
| Fixed Acquirer Network Fee | 6 | DKT 30-2, pg. 12 |
| PCI Monthly Non-Compliance Fee | 3 | DKT 30-2, pg. 33 |
| Annual PCI Service Fee | 1 | DKT 30-2, pg. 26 |
| My Biz Perks | 4 | DKT 30-2, pg. 26 |

*Bill's Grill*

| Fee | Number of Times on Statement | Exemplary Record Citation |
|---|---|---|
| Fixed Acquirer Network Fee | 6 | DKT 30-3, pg. 28 |
| PCI Monthly Non-Compliance Fee | 4 | DKT 30-3, pg. 47 |
| Annual PCI Service Fee | 1 | DKT 30-3, pg. 40 |
| Regulatory Fee | 1 | DKT 30-3, pg. 56 |

*Lucky 7*

| Fee | Number of Times on Statement | Exemplary Record Citation |
|---|---|---|
| Annual PCI Service Fee | 5 | DKT 30-4, pg. 20 |
| PCI Monthly Non-Compliance Fee | 37 | DKT 30-4, pg. 54 |
| PCI Scan Fee | 2 | DKT 30-4, pg. 205 |
| EMV Readiness Fee | 1 | DKT 30-4, pg. 275 |

interest of space, Defendants have only listed one representative citation to each fee's appearance on the statements, and have then listed their count for the number of times each fee appears across all statements.

| Monthly Minimum Discount Fee | 4 | DKT 30-4, pg. 305 |
|---|---|---|
| Batch Header Fee | 50 | DKT 30-4, pg. 4 |
| Chargeback Fee | 3 | DKT 30-4, pg. 48 |
| My Biz Perks | 51 | DKT 30-4, pg. 20 |
| Regulatory Fee | 3 | DKT 30-4, pg. 107 |

Thus, the pleadings demonstrate that each of the named Plaintiffs received monthly statements clearly showing the service fees they now dispute and that they voluntarily and knowingly paid those fees without protest or dispute. Georgia case law, applying the voluntary payments doctrine, bars recovery of alleged overpayments that were easily discoverable by plaintiffs. *See Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc.*, 270 Ga. App. 68, 70 (2004) (Appellant's claim was barred by the voluntary payments doctrine where "[a]ny inconsistencies between the amounts actually charged and the amounts [the appellant] thought it should have been charged . . . could have been discovered simply by comparing the invoices received with the . . . invoices it had on hand.").

### ii.  The service fee fraud claims are barred by waiver.

In addition, Plaintiffs have waived any claims of fraud regarding the service fees. The PCI fee, for example, appeared on Plaintiff Lucky 7's statement in January 2013, the beginning of the period in which they allege to have begun receiving services. Dkt. No. 30-4, at 54. Yet they did not bring suit challenging any of the service fees until November 10, 2016, nearly four years later. Plaintiffs Dinner Bell, Bill's Pizza and Bill's Grill all were first charged this service fee on

October 31, 2013. Dkt. No. 30-1, at 31; 30-2, at 33; 30-3, at 47. Yet they paid these fees and did not bring suit until August 31, 2015.

Georgia courts have held that conduct inconsistent with an alleged fraud, such as contract payments made after discovering an alleged fraud, waives the claim. *See Jernigan Auto Parts, Inc. v. Commercial State Bank*, 186 Ga. App. 267, 271 (dismissing Plaintiff's fraud claim after finding they had "waived the fraud and ratified the notes by their silence after they learned of the [alleged fraud] and by their subsequent payment on the notes"); *Little Sky, Inc. v. Rybka*, 264 Ga. App. 744, 748 (2003) ("A buyer has an election of remedies, i.e., to rescind the contract and sue in tort, or to affirm the contract and sue for damages. . . . Here, however, the buyers made no election. . . . Their conduct in making the partial payments, far from being an election, instead constituted a waiver of any claim of fraud."). Here, Plaintiffs acted inconsistently with their fraud allegations by continuing to pay for and receive services under the Merchant Agreement, with full knowledge of the allegedly fraudulent service fees. As a result this Court should find that they have waived their fraud claims.[10]

---

[10] This argument is not precluded by the Court's ruling on the motion to dismiss in the *Dinner Bell* action. There the Court held that "Defendant's argument that Plaintiffs cannot recover under both their fraud and breach-of-contract claims is of no import; the federal rules allow a party to state separate claims . . . ." Initial Action, Dkt. 36, at 15. Defendants admit that Plaintiffs may plead inconsistent claims in the alternative as a matter of procedural law. But, as a matter of

### C. Plaintiffs' unjust enrichment and declaratory judgment claims should be dismissed.

#### i. Plaintiffs allege an express contract governs the parties' relationship, barring the unjust enrichment claim.

Plaintiffs' claims are governed by the Merchant Agreements, as evidenced by their assertion of a breach of contract claim and the complaint's frequent references to the agreement between the parties. The Georgia Court of Appeals has recognized that "[a]n unjust enrichment theory does not lie where there is an express contract." *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 167 (2007) (internal quotations omitted). Because this dispute is governed by an express, valid contract Plaintiffs' claim for unjust enrichment should be dismissed.

This was the basis on which Judge Cohen dismissed the *Cobra* Plaintiffs' unjust enrichment claim. In his order, Judge Cohen noted that "[t]he entire basis of Plaintiffs' lawsuit is that the indebtedness was sent to Global Direct and processed, but that they were charged higher fees than they agreed to." *Cobra*, at 11. He then held that "[w]here a valid contract exists, unjust enrichment claims are barred as a matter of law." *Id.* Because the contracts at issue in *Cobra* were found to be valid, Judge Cohen dismissed the unjust enrichment claim. Defendants ask this Court to do the same.

---

substantive Georgia law, Plaintiffs may not assert a fraud claim after waiving such a claim through their conduct.

Nor should Plaintiffs now be allowed to claim the contract is void. While Plaintiffs do purport to plead unjust enrichment "as an alternative to Plaintiffs' claim for breach of contract," the complaint is littered with allegations that Defendants deviated from the terms of these contracts, implicitly admitting that the contracts govern this dispute. *See e.g.,* Compl., at ¶ 49 ("Defendants charged several types of fees that are simply not set forth in Plaintiffs' Applications"); ¶ 59 (alleging Defendants charged inflated fees, ". . . in addition to charging Plaintiffs and other Class members the *agreed-upon processing fee*" (emphasis added). After never challenging the validity of the contract when it was in force, they should not be allowed now to assert it is not binding.

In similar processing fee litigation, the Eastern District of New York recently rejected a plaintiff-merchant's attempt to challenge a payment processing contract after honoring the agreement for the entirety of the contract period. *Zam & Zam Super Market, LLC v. Ignite Payments, LLC,* 2:16 cv-06370 (E.D.N.Y. Oct. 31, 2017), was a card-processing suit brought by one of the same plaintiffs' lawyers in this case against another NAB competitor. There, the court rejected the plaintiffs' claim for unjust enrichment, finding that the plaintiffs were estopped from challenging the validity of the contract where "[t]he complaint does not interpose any allegations that Plaintiff objected or otherwise failed to accept the contract's benefits . . . during the duration of the business relationship." *Id.* at 45

(attached as Exhibit B). Though the court there applied New York law, the same principles apply under Georgia law. *See, e.g., Donchi, supra.*

## ii.  Declaratory judgment is inappropriate.

Georgia's declaratory judgment statute, O.C.G.A. § 9-4-2(c), has been construed as requiring the Plaintiff to "show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action . . . ." *Chattahoochee Bancorp, Inc. v. Roberts*, 203 Ga. App. 405, 406 (1992) (internal quotations omitted). Similarly, Georgia Courts have found that "[a] declaratory judgment action will not lie where the rights between the parties have already accrued, because there is no uncertainty as to the rights of the parties and risk to taking future action." *Thomas v. Atlanta Cas. Co.*, 253 Ga. App. 199, 201 (2001). Because Plaintiffs' declaratory relief claim concerns rights that have already accrued, and alleges no uncertainty regarding future action, the Court should dismiss this claim.

Plaintiffs Bill's Grill, Bill's Pizza, and Dinner Bell stopped receiving services from Defendants in December of 2013. Compl., ¶¶ 13-15. Plaintiff Lucky 7 stopped receiving services from Defendants in 2016. Compl., ¶ 12. Plaintiffs have alleged no ongoing relationship with Defendants outside of this lawsuit, nor any future action they must take regarding Defendants. All alleged breaches of contract and instances of alleged fraud took place during the pendency of the

contractual relationship between the parties. Accordingly, because Plaintiffs' own complaint shows that the rights of the parties in the dispute have already accrued, and does not show any uncertainty facing Plaintiffs, the Court should dismiss the declaratory judgment claim. *See Zam & Zam Super Market, LLC*, 2:16 cv-06370, at 23-24 (noting that where plaintiff-merchants no longer receive card processing services from defendants, and accordingly seek declaratory relief regarding past conduct, there is no basis for declaratory relief).

## IV. CONCLUSION

As the Eleventh Circuit recognized in *Triad*, notice provisions "ensur[]e that the party defending the claim has the opportunity to investigate the underlying facts while they are fresh." *Triad*, 679 F. App'x at 753, at n.6. Defendants were denied this opportunity by Plaintiffs' failure to give Defendants' notice of their claims. And, as to the service fees, Plaintiffs sat on their statements for months, or even years, while raising no complaints. Now, Defendants are forced to investigate claims years after they occurred. This is the exact situation Defendants contracted with Plaintiffs to avoid. This Court should enforce the 90 day notice provision and find that Plaintiffs claims are barred.

Alternatively, this Court should find that Plaintiffs have waived their fraud claims, by continuing to pay the challenged fees, which were displayed on their monthly statements and described in statement messaging. These same facts

support finding that Plaintiffs' breach of contract claim for the service fees is barred by the voluntary payments doctrine.

Plaintiffs' non-contract based claims also fail. The Merchant Services Agreement, upon which Plaintiffs base their contract and fraud claims, precludes their assertion of unjust enrichment. Further, the complaint's focus on prior conduct between the parties, illustrates the inappropriateness of declaratory relief regarding these claims.

Defendants therefore respectfully request that judgment on the pleadings be entered in its favor as to all claims alleged in the complaint.

This 2nd day of March, 2018.

/s/ Joshua P. Gunnemann

Robert B. Remar
Georgia Bar No. 600575
Joshua P. Gunnemann
Georgia Bar No. 152250
Rachel M. Bishop
Georgia Bar No. 764613

ROGERS & HARDIN, LLP              *Counsel for Defendants*
2700 International Tower
229 Peachtree Street, NE
Atlanta, Georgia  30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
rremar@rh-law.com
jgunnemann@rh-law.com
rbishop@rh-law.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings has been prepared in accordance with Local Rule 5.1(C) using 14-point Times New Roman font.

/s/ *Joshua P. Gunnemann*
Joshua P. Gunnemann
Georgia Bar No. 152250
jgunnemann@rh-law.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

T.S. KAO, INC. d/b/a LUCKY 7
CHINESE FOOD, THE DINNER
BELL CAFÉ, INC., BILL'S PIZZA
PALM SPRINGS, and BILL'S GRILL
1 LLC, individually and on behalf of all
others similarly situated,

     Plaintiffs,

   v.         Case No. 1:16-cv-04219-SCJ

NORTH AMERICAN BANCARD,
LLC and GLOBAL PAYMENTS
DIRECT, INC.,

     Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings was electronically filed with the Clerk of Court using the CM/ECF system which automatically serves notification of such filing upon all counsel of record.

This 2nd day of March, 2018.

        */s/ Joshua P. Gunnemann*
        Joshua P. Gunnemann
        Georgia Bar No. 152250

ROGERS & HARDIN, LLP                    *Counsel for Defendants*
2700 International Tower
229 Peachtree Street, NE
Atlanta, Georgia  30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224
jgunnemann@rh-law.com