## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| T.S. KAO, INC. d/b/a LUCKY 7 CHINESE FOOD, THE DINNER BELL CAFÉ, INC., BILL'S PIZZA PALM SPRINGS, and BILL'S GRILL 1 LLC, individually and on behalf of all others similarly situated, | Case No. 1:16-CV-04219-SCJ (Consolidated with Case No. 1:15-CV-03059-SCJ) |
| Plaintiffs, | |
| v. | |
| NORTH AMERICAN BANCARD, LLC, and GLOBAL PAYMENTS DIRECT, INC., | |
| Defendants. | |

### PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES

After three and a half years of hard-fought litigation, Class Counsel successfully negotiated a settlement with a cash fund of $15 million and other relief, including significant business practice changes.  To compensate them for their efforts, Class Counsel hereby request that – after the Final Approval hearing set for August 20, 2019 has taken place – the Court approve a fee of $5 million (one-third of the cash fund) and reimbursement of their litigation expenses, as

provided in the settlement agreement.  While not binding on the Court, the parties' agreement is entitled to substantial weight where, as here, the negotiations were conducted at arm's length after the merits were settled.  *See* Final Order, *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*, No. 1:16-CV-00012-MHC (N.D. Ga.) ("*Mercury*") [Doc. 104 at 11]

The requested fee is reasonable under the percentage of the fund method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) and is supported by declarations from Class Counsel (Exhibits 1 and 2), former Georgia Attorney General Michael Bowers (Exhibit 3), and Atlanta mediator Hunter Hughes, whose declaration was submitted in the *Mercury* case where a fee of one-third of the cash fund was approved (Exhibit 4). Moreover, the expenses for which Class Counsel seek to be reimbursed were reasonably and necessarily incurred.  The request for fees and expenses thus should be approved.

Class Counsel also request approval of service awards to the class representatives totaling $10,000. The settlement would not have been possible but for their service and willingness to accept the risk that they could be contractually liable for Defendants' attorneys' fees, even if they won the litigation.  The awards are both legally and factually warranted.

2

## FACTUAL BACKGROUND

The background of this litigation was described in Plaintiffs' motion to direct notice to the class.  In this brief, Class Counsel will focus on their work to investigate and prosecute the claims at issue.  That work is described in Class Counsel's joint declaration submitted in connection with the motion to direct notice to the class (cited below as "Jt. Decl." and attached as Exhibit 1) and Class Counsel's supplemental declaration submitted in connection with this motion (cited as "Supp. Jt. Decl." and attached as Exhibit 2).

### Filing of the *Dinner Bell* and *Lucky 7* Actions

Class Counsel began investigating potential abuses by payment card processors about four years ago when Adam Levitt began investigating the facts pertaining to a small merchant who suspected he was being overcharged.  The facts were not easy to determine.  Monthly invoices sent to merchants typically are obtuse, the payment card processing industry is complex, and relevant information is hard to come by.  Mr. Levitt associated Ken Canfield and together they spent months researching the facts and law, interviewing industry insiders and those with specific knowledge about particular processors' practices, consulting with experts, and reviewing numerous contracts and billing records.  (Jt. Decl., ¶ 9)

In August, 2015, Mr. Levitt and Mr. Canfield filed the case against NAB

3

that started this litigation, *The Dinner Bell Café, Inc. v. North American Bancard, LLC,* No. 1:15-CV-03059-SCJ (N.D. Ga.).   That case is believed to be the country's first class action by merchants against a payment card processor alleging inflation of fees that should have been passed through at cost.   About four months later, Mr. Canfield and Mr. Levitt filed the *Mercury* action, an analogous case against another payment processor, which settled in 2017 before substantial discovery.   (Jt. Decl. ¶ 10)

Immediately after the *Dinner Bell* action was filed, this Court ordered Plaintiffs to show cause why the case should not be dismissed for lack of jurisdiction.  Plaintiffs responded.  NAB then moved to dismiss.  After briefing, the motion was denied on August 4, 2016.   NAB answered and later amended its answer.   On December 27, 2016, as discovery was beginning, NAB moved for judgment on the pleadings with regard to Plaintiff's class action allegations and sought expedited consideration and a stay of discovery.   Plaintiffs responded to both motions. (*Id.* ¶ 11)

On November 10, 2016, more than a year after the *Dinner Bell* action was filed, Webb Klase & Lemond, an Atlanta law firm, filed *T.S. Kao, Inc. d/b/a Lucky 7 Chinese Food v. Global Payments Direct, Inc.*, No. 1:16-cv-04219-SCJ.   The *Lucky 7* action asserted similar claims to those at issue in the *Dinner Bell* action

and added Global Payments Direct, Inc. as a defendant.  Defendants moved to dismiss, or alternatively, to strike the class action allegations, and to stay the case. Plaintiff opposed both motions.  (Jt. Decl. ¶ 12)

### The Course of Consolidated Proceedings

On January 17, 2019, all parties moved to consolidate the *Dinner Bell* and *Lucky 7* actions.  The Court granted the motion and directed further proceedings to take place in the *Lucky 7* action.  Mr. Canfield and Mr. Levitt have served as plaintiffs' lead counsel in the consolidated litigation.  The overwhelming bulk of the work in the consolidated litigation has been done by them, lawyers with their firms, and David Buckner, a Miami lawyer with substantial class action experience.  The lawyers at Webb Klase & Lemon who filed the *Lucky 7* action later moved to withdraw and their motion was granted.   (Supp. Jt. Decl. ¶ 4)

Class Counsel filed an amended complaint in the consolidated action on February 22, 2017.  Defendants moved to strike Plaintiffs' class action allegations and to dismiss for lack of subject matter jurisdiction.  That motion was fully briefed and ultimately denied on December 15, 2017.  Defendants answered on January 16, 2018 and, on March 2, 2018, moved for judgment on the pleadings. While the motion was fully briefed, it was never ruled upon.  (Jt. Decl. ¶13)

Meanwhile, the parties moved forward with discovery.  Due to the nature of

the payment processing industry, Plaintiffs' allegations, the size of the putative class, and the massive amount of data pertaining to the hundreds of millions of transactions, discovery was extensive.  The parties exchanged numerous document requests and interrogatories, served third-party subpoenas, and produced more than a half million pages of documents.  Class Counsel took nine depositions of Defendants and their employees, including Marc Gardner, NAB's CEO.  Class Counsel also defended depositions of third parties and the class representatives. Much of this discovery, including all depositions, was conducted under substantial time pressure.  On September 20, 2018, the parties jointly moved to extend the discovery period due to the difficulty and delays involved in producing Defendants' data.  The Court denied the motion, leaving approximately three weeks to complete discovery, including all depositions, without the benefit of that data. (Supp. Jt. Decl. ¶ 5)

On October 15, 2018, the last day of the discovery period, Defendants finally produced multiple spreadsheets detailing each payment card transaction processed for over 500,000 merchants over a period of roughly nine years.  These spreadsheets were so voluminous that Class Counsel's computer systems initially crashed when trying to open them.  Defendants also continued to produce data and documents after the discovery period expired.  Class Counsel and their experts

spent hundreds of hours analyzing the spreadsheets and additional material, identifying the particular fees that had been inflated or improperly charged, and calculating alleged damages for every class member. All of this work was done under considerable time pressure due to the need to meet short deadlines for expert reports and other matters. (Supp. Jt. Decl. ¶ 6)

The closing weeks of the discovery period also resulted in a flurry of discovery-related motions, including a motion to compel, motions for protective order, and motions to quash third-party subpoenas. Much of this motion practice was triggered by Defendants' service of third-party subpoenas on a consultant who had worked with Class Counsel in their investigation of the payment card industry and Defendants' service of subpoenas on Mr. Levitt's current and prior law firms. Class Counsel were forced to research, brief, and file appropriate responses while also attempting to complete discovery needed to prove Plaintiffs' claims, again under considerable time pressure. (Supp. Jt. Decl. ¶ 7)

On October 18, 2018, at the parties' request, the Court agreed to allow Plaintiffs to take several additional depositions, postponed deadlines relating to experts and certain motions, and stayed the action for 90 days to permit settlement discussions. The parties also informed the Court that all but one of the pending discovery motions had been resolved and that the other motion would not need to

be decided if the case settled.  (Supp. Jt. Decl. ¶ 8)

## **Mediation, Settlement Negotiations, and Agreement**

The parties retained well-respected Atlanta mediator, Ralph Levy, to preside over their settlement negotiations.  Before meaningful mediation could occur, the parties understood Plaintiffs' damages experts – Ian Ratner and a team of forensic accountants from GlassRatner in Atlanta having extensive experience with the payment processing industry – needed to calculate class-wide damages using Defendants' voluminous data.  Plaintiffs presented their expert's calculations in a comprehensive mediation statement given to Mr. Levy and Defendants on December 6, 2018.  Because Defendants needed time to evaluate Plaintiffs' calculations, the mediation did not occur until January 16, 2019.  To narrow the issues in anticipation of the mediation, the parties also exchanged supplemental mediation statements and additional expert analysis.  (Jt. Decl. ¶¶ 16-17)

Despite lasting more than ten hours, the mediation was unsuccessful.  There was vigorous disagreement regarding the strengths and weaknesses of the parties' claims and defenses, the likelihood of a class being certified, and the merits of the pending motion for judgment on the pleadings.  The parties could not even agree on the quantum of damages.  Accordingly, the parties informed the Court that mediation was unsuccessful and reengaged in the litigation process.  Nevertheless,

the parties continued to negotiate with help from Mr. Levy and, on February 12, 2019, Plaintiffs entered into binding memoranda of understanding with NAB and Global. The parties informed the Court of the proposed settlement and requested time to reduce the memorandum of understanding with NAB to a comprehensive written settlement agreement and file the appropriate motion to begin the approval process. The Court granted the request. (Jt. Decl. ¶¶ 17-18)

Negotiating the settlement agreement proved to be contentious, time-consuming, and required frequent input from both side's experts. On April 15, 2019, the parties finalized and signed the settlement agreement and Plaintiffs filed their motion for approval to notify the class. Class Counsel were scrupulous in avoiding discussion of the amount of fees, expenses or service awards until after the substantive terms of the settlement had been resolved. (Supp. Jt. Decl. ¶ 9)

## Post-Settlement Work

Following execution of the settlement agreement, Class Counsel have spent and will continue to spend substantial time and effort into the future on this case. This future work will include filing final approval papers, dealing with any objections and appeals, coordinating with the settlement administrator and defense counsel to oversee the notice program and claims process, answering questions from class members, monitoring the claims response, sending reminder notices to

those who have not yet filed claims, and communicating with any State Attorneys General who request more information, as well as the Department of Justice which may do the same.  Class Counsel's work will continue past the final approval hearing and not conclude until all claims are paid and the settlement consummated. (Supp. Jt. Decl. ¶ 10)

## ARGUMENT AND CITATION OF AUTHORITY

## I.   The Requested Fee is Reasonable Under the Percentage Method

### A.   The Common Fund Doctrine and Eleventh Circuit Law

It is well established that counsel whose work results in a substantial benefit to a class is entitled to a fee under the common benefit doctrine.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).   The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989).   The doctrine also ensures those who benefit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478.

The controlling authority in the Eleventh Circuit is *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991), which held that fees in common fund cases must be determined based on the percentage of the fund as

opposed to the lodestar approach that focuses on the time expended by class counsel multiplied by their hourly rates. *See, e.g., In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011). The Court has discretion to choose the percentage, taking into account the factors listed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). *See Camden I*, 946 F.2d at 775. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.,* at 774.

In practice, following *Camden I,* fee awards in the Eleventh Circuit have averaged around one-third of the class benefit. *See Wolff v. Cash 4 Titles*, 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one-third" and listing cases awarding fees of 30 percent or more); *see also, e.g., Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming one-third); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344 at *6 and n. 6 (N.D. Ga. Oct. 26, 2012) (awarding a one-third fee and listing other similar cases); *Morefield v. NoteWorld, LLC,* 2012 WL 1355573 at *5 (S.D. Ga. Apr. 18, 2012) (one-third); *In re Checking,* 830 F. Supp. 2d. at 1367 (30 percent); *Allapattah Services., Inc. v. Exxon Corp*., 454 F.Supp.2d 1185, 1240 (S.D. Fla. 2006) (one-third).

That fee awards in the Eleventh Circuit are typically one-third of the class benefit is supported by Mr. Hughes' declaration in *Mercury*.  According to Mr. Hughes, who has mediated fee agreements in hundreds of common fund cases and is well-versed in the law in the Eleventh Circuit:

> In my experience, the overwhelming number of class action settlements that I have mediated in the Eleventh Circuit where the fee was based on a common fund approach have provided for fees of one-third of the class settlement fund.  Indeed, my best estimate is that more than 90 percent of such settlements I have mediated in the Eleventh Circuit have provided for fees of approximately one-third of the class fund.  The remaining common fund cases have had fee awards as high as 40% of the fund down to approximately 25 percent.

*Mercury,* Doc. No. 82-1 at 4-5 (attached as Exhibit 4).  Mr. Hunter's experience is confirmed by empirical studies.  *See, e.g.,* Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Rev. 937, 951 (2017) (showing the median fee in the 11th Circuit is 33 percent); B. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010) (showing that during 2006 and 2007 the median fee in the 11th Circuit was 30 percent).

The reasonableness of Class Counsel's requested fee also is supported by Mr. Bowers, who concluded that a one-third fee is appropriate based upon his study of the record and other relevant evidence.  As Mr. Bowers explains:

> [I]t is my opinion that class counsel did an incredible job in a

challenging case and that the settlement is a significant achievement for the class. This achievement is even more impressive when it is considered that the case was settled before the certification of a class, resolution of several difficult legal issues presented by defendants' motion for judgment on the pleadings, and a ruling on the expected motion for summary judgment. The quality of class counsel's work, demonstrated in the results achieved for the class, justify the substantial, and in my view, well-earned fee that plaintiffs seek.

(Bowers Decl. ¶ 7)

Further support for the requested fee comes from the recent decision in *Mercury,* a case with the same defendants and analogous claims. In that case, Judge Cohen approved a fee of one-third of the cash fund. Final Order, *Mercury* Doc. No. 104 at 11-12. In many ways, the argument for a one-third fee is even stronger here. *Mercury* was filed five months after this case, but settled two years ago before substantial discovery was done. Because this case was more aggressively defended, Class Counsel had to spend much more time dealing with legal motions, discovery, and other matters. (Supp. Jt. Decl. ¶ 11) Moreover, unlike in *Mercury* the settlement here requires substantial business changes of value to the class, *id.*, justifying a larger fee. *See, e.g. Camden I*, 946 F.2d at 774.

## B. The Requested Fee is Supported by the *Johnson* Factors

The fee request for one-third of the fund is supported by the *Johnson* factors endorsed by the Eleventh Circuit. These factors are discussed below.

### (1)   The Time and Labor Involved

Class Counsel have spent more than 2,600 hours on the consolidated actions and estimate they will spend an additional 300 hours before the litigation is over. Their work has included and will include extensive pre-suit investigation; communicating with clients; finding and interviewing experts; preparing complaints and written discovery; negotiating case management orders and similar documents; researching and drafting hundreds of pages of briefs; conducting extensive discovery; working with experts to analyze huge databases; mediating and drafting the settlement; preparing the approval papers; working with the settlement administrator on the notice and claims programs; and all the other work needed to consummate the settlement.   (Supp. Jt. Decl. ¶ 12)   This work is reasonable and justified in view of the issues, the manner in which the case was defended, and the quality of the result.   (*Id.,* Bowers Decl. ¶ 22(a))

### (2)   The Novelty and Difficulty of the Questions

The case, which likely is the first national class action of this nature to have been filed and the second brought to a successful resolution, involved a host of difficult and novel factual questions.   For example, Class Counsel had to decipher a complex industry; comprehend almost inscrutable billing practices that allegedly were part of a sophisticated scheme to defraud customers; and analyze voluminous

data covering a ten year period.  The case also involved many difficult legal issues that were unresolved before its filing, such as the enforceability of onerous provisions in Defendants' form contracts (namely, those requiring merchants to pay Defendants' fees in any disputes between the parties, waiving class actions, imposing a notice requirement as short as 60 days, and limiting damages) and whether a national class of merchants could be certified.  (Supp. Jt. Decl. ¶ 13) This factor supports the requested fee.  (Bowers Decl. ¶ 22(b))

(3)    *The Skill Requisite to Perform the Legal Service Properly*

Effective representation in any complex class action requires a high level of experience and skill.  An even higher degree of experience and skill was needed to handle this case -- a first-of-its-kind, national class action involving more than 300,000 merchants; difficult factual claims involved a particularly obtuse industry; and unresolved legal issues.  Class Counsel had the necessary skill to prosecute this case as a result of collectively having more than 100 years of experience handling complex litigation in general and large, national class actions in particular. (Supp. Jt. Decl. ¶ 14; Bowers Decl. ¶ 22(c)-(d))

(4)    *The Preclusion of Other Employment*

Had Class Counsel not taken on this case they would have been able to spend significant time on other matters. (Supp. Jt. Decl. ¶ 15)

(5)    *The Customary Fee*

Complex civil litigation involving large groups of individuals and small businesses customarily is handled on a contingent fee because hourly rate fees are too expensive for individuals to bear.  Such fees typically range from one-third to 40 percent, with higher percentages charged in the more complex actions. (Supp. Jt. Decl. ¶ 16); *see, also e.g., Blum v. Stemson*, 465 U.S. 886, 903 n.20 (1984) (noting the usual practice in tort litigation of contingent fees paying one-third of any recovery). As a result, the requested fee is within the customary range. (Supp. Jt. Decl. ¶ 16; Bowers Decl. ¶ 22(f))  Consistent with the usual practice, moreover, Class Counsel and class representatives entered into individual fee agreements providing for payment of 40 percent of any recovery.  (Supp. Jt. Decl. ¶ 16)  The willingness of the class representatives to enter into such agreements is more evidence the requested award is reasonable. *See Blanchard v. Bergeron*, 489 U.S. 87 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness"); *Pharr v. Housing Auth.,* 704 F.2d 1216, 1218 (11th Cir. 1983) (such an agreement may be enforced if the fee agreed to is otherwise reasonable).

(6)    *Whether the Fee is Fixed or Contingent*

This action was prosecuted entirely on a contingent fee basis.  If Class Counsel had not achieved a recovery, they would have received nothing and, in

16

fact, would have suffered a substantial out-of-pocket loss because Class Counsel were advancing all the litigation expenses, which easily could have amounted to several million dollars.  (Supp. Jt. Decl. ¶ 17)  The resulting economic risk justifies a larger fee, (Bowers Decl. ¶¶ 16, 22(e)), and is a critical factor in analyzing the reasonableness of a fee requested by lawyers who handle class actions:

> It is axiomatic that attorneys who work on a contingent fee must charge a higher fee than those who work on a noncontingent basis. . . . This "higher" fee. . . is not a bonus.
>
> From a pure dollars and cents economic view, this higher fee is the appropriate measure of a reasonable fee that is required in the marketplace of services, (1) to induce the attorney to agree to assume the risk that no compensation will be received unless he or she successfully achieves a benefit for the client, and (2) if ultimately successful to compensate for the costs suffered and investment income foregone by delay in payment.

H. Newberg, *Attorney Fee Awards* § 1.08 (1986); *see also, e.g. In re Dun & Bradstreet Credit Svcs. Cons. Lit.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 889 F.2d 21 (11th Cir. 1990).

### (7)  Time Limitations Imposed by the Client or the Circumstances

Class Counsel worked under considerable time pressure during the months of September and October, 2018 due to the Court's decision to deny the parties' joint request for a discovery extension, the resulting need to compress about six

months of discovery into about three weeks, and the fact that Defendants did not produce their data until the end of the discovery period. (Supp. Jt. Decl. ¶ 18) This factor thus supports a larger fee.

### (8) *The Amount Involved and the Results Obtained*

The $15 million settlement provides class members with total monetary benefits averaging roughly $40. After deduction of administration and notice costs, fees, and expenses, class members, on average, are eligible to receive cash or an account credit of roughly $25. Many will get much more, including some whose cash payments will be in the tens of thousands of dollars. The settlement recovers roughly 40 percent of the potential damages as calculated by NAB and 16 percent as calculated by Plaintiffs' experts. Class members also will receive valuable non-monetary benefits, such as the ability to terminate NAB's services after notice of a fee increase without penalty (a penalty that could exceed $295 under the applicable contracts), a release from NAB, and avoiding having to pay NAB's fees in future disputes where the class member prevails. (Jt. Decl. ¶ 22)

Such a recovery compares favorably with comparable settlements that have been approved and in which a one-third fee has been awarded. *See, e.g., Mercury,* (approving a one-third fee in a settlement recovering between 25 and 50 percent of the potential damages but that did not obtain business practice changes); *Sims v.*

*BB&T Corp.*, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) (approving a one-third fee where class counsel recovered 19 percent of the recoverable damages as well as valuable non-monetary relief for the class).   Accordingly, the results obtained support the requested fee.  (Bowers Decl. ¶ 22(g))

### (9) The Experience, Reputation, and Ability of the Attorneys

Class Counsel have extensive experience, skill, and reputations for excellence in complex class actions that contributed to the result.  (Jt. Decl. ¶¶ 2-8; Bowers Decl. ¶ 22(d))  The Court also should consider the quality of opposing counsel under this factor.  *See Camden I*, 946 F.2d at 772 n. 3; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  Defendants were represented by skilled counsel, requiring equally competent representation for the class.  *See generally Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### (10)  The "Undesirability" of the Case

In *Johnson,* the court noted that civil rights attorneys who accept unpopular cases may suffer hardships deserving of a higher fee.  Class Counsel did not suffer such hardship.  As a result, this factor does not apply here.

*(11)  The Nature and Length of the Attorney-Client Relationship*

Class Counsel did not have a prior relationship with the named plaintiffs and thus had no incentive to charge a lower fee in the hope of obtaining future business as is often done in a commercial setting.  (Supp. Jt. Decl. ¶ 19) As a result, this factor does not support an adjustment to the fee.

*(12)  Awards in Similar Cases*

The requested fee is consistent with results in similar cases in this circuit and district, where courts routinely award fees of one-third of the benefit.[1]  According

---

[1] *See, e.g., Waters*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33⅓ percent of $40 million fund most of ultimately reverted to the defendant); *Columbus Drywall,* 2012 WL 12540344 at *2 and n. 2 (awarding a one-third fee and listing similar awards); *Smith v. Floor & Décor Outlets of Am., Inc.,* No. 1:15-cv-04316-ELR (N.D. Ga. Jan. 10, 2017) (awarding one-third of a $14 million settlement); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP (N.D. Ga. May 19, 2014) (approving 1/3 fee of $7,750,000 fund); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, Civil Action No. 1:00-cv-1416-CC (N.D. Ga. May 26, 2005) (33⅓% ); *In re Clarus Corp. Sec. Litig.*, Civil Action No. 1:00-CV-2841-CAP (N.D. Ga. Jan. 6, 2005) (33⅓ percent); *In re Pediatric Servs. of Am., Inc. Sec. Litig.*, No. 1:99-CV-0670-RLV (N.D. Ga. Mar. 15, 2002) (33⅓ percent); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) ("courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases" and citing supporting examples) (emphasis added); *In re Managed Care Litig. v. Aetna,* 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5% on settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co*., 95-2152-CIV-Gold (S.D. Fla. May 30, 2003) (33⅓% of $77.5 million settlement); *In re Terazosin Hydrochloride Antitrust Litig., 99-1317-MDL-Seitz* (S.D. Fla. Apr. 19, 2005) (33⅓% on settlement of over $30 million); *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33% of $10 million settlement).

to published studies, fees in common fund class actions typically average about what Class Counsel are seeking. *See, e.g.,* Eisenberg, *et al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Rev. at 951; *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp.2d 942 (E.D. Tex. 2000) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery"); *In re Checking Account Overdraft Litig.,* 2014 WL 11370115 at *18 (S.D. Fla. Jan. 6, 2014) (citing a 2010 study supporting a 30 percent fee in the Eleventh Circuit).

### *(13)   Another Factor Supports the Requested Fee*

Another factor identified in *Camden I,* 946 F. 2d at 775, supports a one-third fee here – the economics of prosecuting a class action.   Mr. Bowers explains:

> To incentivize counsel to undertake a case of this magnitude against experienced and well-paid defense counsel, the fee award must represent a sufficient premium over the time value of the work invested to justify the economic risks faced by class counsel.

(Bowers Decl. ¶ 22(e))  Mr. Bowers further notes:

> [T]he economics of the practice of law are such that without a sizeable financial incentive lawyers will not take on the role of a "private attorney general" and the type of misconduct defendants were alleged to have engaged in here likely will not be rectified.   Class counsel ably filled the role of a private attorney general and should be appropriately rewarded for their efforts.   Failure to do so will discourage lawyers from taking on similar litigation in the future and thus undercut the deterrent impact of our laws designed to protect the public from this type of wrongdoing.

(*Id.* ¶ 18)   Many courts have also emphasized the importance of this factor in

setting a fee. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 687 (M.D. Ala. 1988); *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985) ("If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear.").

## II.   The Requested Fee is Reasonable Under the Lodestar Approach

The Eleventh Circuit has authorized courts to use the lodestar method as a cross-check on the reasonableness of a percentage-based fee. *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 at 1298.  While a lodestar cross-check may sometimes be helpful, it is not mandated; indeed, one was not done in *Camden I*, "which mandated the *exclusive* use of the percentage method in common fund cases."  *In re Checking Account,* 830 F. Supp. 2d at 1362 ("Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all").  As one court noted in declining an objector's demand that the court scrutinize class counsel's billing records in evaluating a common fund fee request, "the lodestar approach should not be imposed through the back door via a cross-check."[2]  *Id.* at 1362.

---

[2] Class Counsel are providing summaries of the hours each firm has worked and a narrative of the work that was done, but not the billing records themselves. Mr. Bowers reviewed the records, providing independent verification of their accuracy.

Regardless of whether this Court decides to do a lodestar cross-check, the requested fee easily passes muster.  As noted above, the lawyers for the class have invested more than 2,600 hours and estimate that they will spend an additional 300 hours on the matter before the settlement is consummated.  The value of this time exceeds $2.25 million based upon the lawyers' hourly rates.  (Supp. Jt. Decl. ¶ 21) Those hourly rates are reasonable and within the range charged by lawyers of similar experience in complex cases of this nature.  (*Id.* ¶ 20; Bowers Decl. ¶ 23) The time was necessarily spent and reflects a minimum of duplication of effort. (Supp. Jt. Decl. ¶ 20)  And, the time is consistent with what would be expected in litigation of this length and magnitude. (Bowers Decl. ¶ 23)

When using the lodestar approach in common fund cases, courts typically apply a multiplier to reward counsel for their risk, the contingent nature of the fee, and the result obtained.  Here, the requested fee represents a modest multiplier of 2.2.  This multiplier is well within the range approved by district courts in this Circuit.  *See, e.g., Columbus Drywall*, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008) ("Multipliers of three and higher appear to be common."); *Pinto v. Princes Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) ("in large and

---

Class Counsel, of course, will provide the records to the Court upon request. However, Class Counsel ask that the records, if requested, be submitted in camera to protect their work product and other confidential information.

23

complicated class actions [multipliers range from 2.26 to 4.5 while three appears to be the average"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (multipliers range from less than two to more than five).

## III.   The Court Should Reimburse Class Counsel for their Expenses

Class Counsel seek to be reimbursed for $438,090.78 in expenses.[3] (Supp. Jt. Decl. ¶ 22)   The expenses were necessarily and reasonably incurred in prosecuting the case; consistent with what are expected in a case of this complexity and magnitude; overwhelmingly of fees paid to experts, court reporters, and travel; and do not include items typically billed by many lawyers, such as postage, in-house copying, computerized legal research and long distance telephone calls. (*Id.*; Bowers Decl. ¶ 24)   The request thus should be granted.   *See, e.g., Waters,* F.3d at 1298 (class counsel are entitled to expenses).

## IV.   The Court Should Approve the Requested Service Awards

Courts routinely approve service awards to compensate class representatives for their time and efforts on behalf of the class and to encourage them to serve in a representative capacity.   *See, e.g., Ingram,* 200 F.R.D. at 695-96 ($300,000 service

---

[3]   Class Counsel have included in the total expenses for which they seek reimbursement $10,000 in estimated future expenses relating to such matters as additional expert time and travel to the final approval hearing in August.   (Ex. A to Supp. Jt. Decl.)   Before the hearing, Class Counsel intend to submit an updated, more specific expense total that will reflect the actual expenses that are incurred.

awards); *In re Checking,* 2014 WL 11370115 at *12-13 ($10,000); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving awards ranging from $5,000 to $100,000).  The service awards totaling $10,000 specified by the settlement – $5,000 to T.S. Kao, Inc. and $5,000 to the owner of The Dinner Bell Café, Inc., Bill's Pizza Palm Springs, and Bill's Grill 1, LLC. – are justified.  Not only did the class representatives devote substantial time to this litigation, they exposed themselves to the risk they could be forced to pay the defense legal fees and expenses, regardless of the outcome, if provisions in their merchant agreements were enforced.   But for the class representatives' service and willingness to bear this risk, other class members would have received nothing.  (Supp. Jt. Decl. ¶ 23)

## CONCLUSION

For the reasons set forth above, after the class has had an opportunity to weigh in and the final approval hearing set for August 20, 2019 has taken place, Class Counsel request that the Court approve $5 million in attorneys' fees, reimbursement of costs in the amount of $438,090.78 (subject to being updated before the final approval hearing), and services awards of $5,000 to the owners of the two class representatives.

Respectfully submitted, this 21st day of June, 2019.

/s/ Kenneth S. Canfield
Kenneth S. Canfield
Ga. Bar No. 107744
Doffermyre Shields Canfield
   & Knowles, LLC
1355 Peachtree Street, NE, Suite 1725
Atlanta, Georgia  30309
404-881-8900
kcanfield@dsckd.com

/s/ Adam J. Levitt
Adam J. Levitt (*pro hac vice*)
Amy E. Keller (*pro hac vice*)
Laura E. Reasons (*pro hac vice*)
Adam Prom (*pro hac vice*)
DiCello Levitt & Gutzler LLC
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
(312) 214-7900
alevitt@dlcfirm.com
akeller@dlcfirm.com
lreasons@dlcfirm.com
aprom@dlcfirm.com

/s/ Jonathan Palmer
Jonathan Palmer
Ga. Bar No. 453452
Jonathan Palmer Law
4200 Northside Parkway, NW
Building One, Suite 200
Atlanta, Georgia 30327
(404) 720-0750
jonathan@jonathanpalmerlaw

*Attorneys for the Plaintiff Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in compliance with Local Rule 5.1(c), that the foregoing motion and brief has been prepared using 14-point Times New Roman font.

<u>/s/ Kenneth S. Canfield</u>
Kenneth S. Canfield

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of June, 2019, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

/s/ Kenneth S. Canfield
Kenneth S. Canfield