# EXHIBIT 2

# Supplemental Declaration of Co-Lead Class Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| T.S. KAO, INC. d/b/a LUCKY 7 CHINESE FOOD, THE DINNER BELL CAFÉ, INC., BILL'S PIZZA PALM SPRINGS, and BILL'S GRILL 1 LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH AMERICAN BANCARD, LLC, and GLOBAL PAYMENTS DIRECT, INC.,<br><br>Defendants. | Case No. 1:16-CV-04219-SCJ<br><br>(Consolidated with Case No. 1:15-CV-03059-SCJ) |

**<u>SUPPLEMENTAL DECLARATION OF CO-LEAD CLASS COUNSEL</u>**

(1)     This supplemental declaration is filed by Ken Canfield and Adam Levitt.  From the inception of this action, we have served as co-lead counsel for Plaintiffs.  The purpose of this declaration is to supplement the declaration that we previously filed in connection with Plaintiffs' Motion to Direct Notice of Proposed Settlement to the Class.

(2)     In our earlier declaration, we set forth our professional qualifications

as well as those of our colleagues, Amy Keller and Jonathan Palmer. David Buckner, a Miami lawyer, has also worked on the litigation. Because Mr. Buckner's time is included in our fee application, we want to apprise the Court of his background too.

(3)     Mr. Buckner, admitted to practice in Florida, New York, and the District of Columbia, is one of the founding partners of Buckner + Miles in Miami, Florida. After earning his law degree from Harvard Law School and clerking for Judge R. Lanier Anderson, III of the United States Court of Appeals for the Eleventh Circuit, Mr. Buckner was associated with the law firm of Williams & Connolly before becoming an Assistant United States Attorney in the Southern District of Florida for eight years. During that time he conducted numerous investigations and trials of complex frauds and corrupt enterprises. Since returning to private practice eleven years ago, Mr. Buckner has successfully tried, defended on appeal, and settled numerous class actions and multi-district litigation proceedings in Florida and across the United States. Mr. Buckner also worked with us in the *Mercury* case, and, as a result, is familiar with the type of practices in the payment card industry at issue in this case. Further information regarding Mr. Buckner's background and that of his firm is available at: www.bucknermiles.com.

(4)    During the course of the litigation, the overwhelming bulk of the work prosecuting Plaintiffs' claims has been done by our firms and by Mr. Palmer after he left Doffermyre Shields Canfield & Knowles, LLC to start his own firm.  Mr. Buckner has assisted with some of the legal work and consulted on discovery matters.  Adam Webb and other lawyers at Webb Klase & Lemond, who filed the *Lucky 7* action and eventually withdrew as counsel of record, spent a modest amount of time on the matter before it was consolidated with this one.  We are not including their time in our fee application.    However, we are seeking reimbursement for expenses they incurred that were of benefit to the class.

(5)    We spent a substantial amount of time in this case on discovery.  Due to the nature of the payment processing industry, Plaintiffs' allegations, the size of the putative class, and the massive amount of data pertaining to the hundreds of millions of transactions, discovery was extensive.    The parties exchanged numerous document requests and interrogatories, served third-party subpoenas, and produced more than a half million pages of documents.  Class Counsel took nine depositions of Defendants and their employees, including Marc Gardner, NAB's CEO.   Class Counsel also defended depositions of third parties and the class representatives.   Much of this discovery, including all depositions, was conducted under substantial time pressure.  On September 20, 2018, the parties

jointly moved to extend the discovery period due to the difficulty and delays involved in producing Defendants' data.  The Court immediately denied the motion, leaving approximately three weeks to complete discovery, including all of the depositions, without the benefit of that data.

(6)     On October 15, 2018, the last day of the discovery period, Defendants finally produced multiple spreadsheets detailing each payment card transaction they processed for over 500,000 merchants over a period of roughly nine years. These spreadsheets were so voluminous that our computer systems initially crashed when trying to open them.  Defendants also continued to produce data and documents after the discovery period expired.  We and our experts spent hundreds of hours analyzing the spreadsheets and additional material, identifying the particular fees that had been inflated or improperly charged, and calculating the alleged damages for every class member.  All of this work was done under considerable time pressure due to the need to meet short deadlines for expert reports and other matters.

(7)     The closing weeks of the discovery period also resulted in a flurry of discovery-related motions, including a motion to compel, motions for protective order, and motions to quash third-party subpoenas.  Much of this motion practice was triggered by Defendants' service of third-party subpoenas on a consultant who

had worked with us in our investigation of the payment card industry and on Mr. Levitt's current and prior law firms. We were forced to research, brief, and file appropriate responses while also attempting to complete discovery needed to prove Plaintiffs' claims, again under considerable time pressure.

(8)    On October 18, 2018, at the parties' request, the Court agreed to allow Plaintiffs to take several additional depositions, postponed deadlines relating to experts and certain motions, and stayed the action for 90 days to permit settlement discussions. The parties also informed the Court that all but one of the pending discovery motions had been resolved and that the other motion would not need to be decided if the case settled.

(9)    In our prior declaration, we described the course of the settlement negotiations that led up to the execution of binding memoranda of understanding with Defendants NAB and Global. Turning the memorandum of understanding with NAB into a comprehensive settlement agreement also proved to be contentious and time-consuming and required frequent input from both sides' experts. On April 15, 2019, the parties finalized and signed the settlement agreement and Plaintiffs filed their motion for approval to notify the class. Class Counsel were scrupulous in avoiding discussion of the amount of fees, expenses or service awards until after the substantive terms of the settlement had been resolved.

(10)   Following execution of the settlement agreement, Class Counsel have spent and will continue to spend substantial time and effort on this case into the future.   This work will include filing final approval papers, dealing with any objections and appeals, coordinating with the settlement administrator and defense counsel to oversee the notice program and claims process, answering questions from class members, monitoring the claims response, sending reminder notices to those who have not yet filed claims, communicating with any State Attorneys General who request more information, as well as the United States Department of Justice which may do the same, and other matters.   Class Counsel's work will continue past the final approval hearing and not conclude until all claims are paid and the settlement consummated.

(11)   We were both class counsel in *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*, No. 1:16-CV-00012-MHC (N.D. Ga.) ("*Mercury*").   *Mercury* was filed five months after this case, but settled before substantial discovery was done and the settlement was approved by Judge Cohen in 2017.   In this case, which was more aggressively defended, we had to deal with additional, potentially dispositive motions; intense discovery involving extensive "meet and confer" negotiations, significant document production and depositions; a variety of discovery-related motions filed under considerable time pressure; and

other matters.  As a result, we spent substantially more work.  Another significant difference between this case and *Mercury* is that we were able to obtain here substantial business changes of value to the class, which we were unable to obtain as a part of the *Mercury* settlement.

(12)   Class Counsel have spent more than 2,600 hours on the consolidated actions and estimate we will spend approximately an additional 300 hours before the litigation is over.  This work has included and will include extensive pre-suit investigation; communicating with clients; finding and interviewing experts; preparing complaints and written discovery; negotiating case management orders and similar documents; researching and drafting hundreds of pages of briefs; conducting extensive discovery; working with experts to analyze huge databases; mediating and drafting the settlement; preparing the approval papers; working with the settlement administrator on the notice and claims programs; and all the other work needed to consummate the settlement.  This work is reasonable and necessary to prosecute Plaintiffs' claims effectively and to ensure that the settlement is properly administered and consummated.

(13)   This case, we believe, is the first national class action to be filed by merchants against a payment card processor alleging the inflation of fees that were to have been passed through at cost.  We also believe that it is only the second such

suit to be brought to a successful resolution, *Mercury* being the first.  The case thus involved a host of difficult and novel factual questions.  For example, we had to decipher a complex industry that defies transparency; comprehend almost inscrutable billing practices that allegedly were part of a sophisticated scheme to defraud customers; and analyze voluminous documents and data covering a ten year period.  We also confronted many difficult legal issues that were unresolved before this case was filed, such as the enforceability of provisions in Defendants' form contracts (such as those governing fees in any disputes between the parties, waiving class actions, imposing a notice requirement as short as 60 days, and limiting damages) and whether a national class of merchants could be certified.

(14)   Proper case management and effective representation in any complex class action requires a high level of experience and skill.  An even higher degree of experience and skill was needed to handle in this case -- a first-of-its-kind, national class action involving more than 300,000 merchants; difficult factual claims involving a particularly obtuse industry; and unresolved legal issues.  As described in our prior declaration, our firms had the necessary skill to prosecute this case as a result of having collectively more than 100 years of experience handling complex litigation in general and large, national class actions in particular.

(15)   If we had not taken on this case, our firms would have been able to

spend significant time on other matters. Balancing the demands of an active plaintiffs' practice requires making decisions about which cases to take and how to allocate our time, which is our largest asset. Our firms routinely have opportunities to file or participate in cases that require commitments of substantial time and money. We cannot take on all of the cases that are available to us because of the finite resources available. Once we commit to take a case, our decision necessarily limits the opportunity to take on other cases. And, that certainly was the result of our decision to take on this case.

(16) Complex civil litigation involving large groups of individuals and small businesses customarily is handled on a contingent fee because hourly rate fees are too expensive for most individuals to bear. Contingent fees typically range from one-third to 40 percent. Higher percentages are charged in the more complex – and thus more time intensive and riskier – actions. Consistent with customary practice, several class representatives in this case agreed to pay a 40 percent contingent fee if their claims were resolved on an individual basis.

(17) This action was prosecuted entirely on a contingent fee basis. If we had not achieved a recovery, we would have received nothing and, in fact, we would have suffered a substantial out-of-pocket loss because we advanced all the litigation expenses, which easily could have amounted to several million dollars.

(18)   We worked under considerable time pressure during the months of September and October, 2018 due to the Court's decision to deny the parties' joint request for a discovery extension, the resulting need to compress about six months of discovery into about three weeks, and the fact that Defendants did not produce their data until the end of the discovery period.

(19)   We did not have any incentive as a result of any long-standing business relationships with the class representatives to charge a lower fee in the hope of obtaining future business, as is often done in a commercial setting.

(20)   According to contemporaneous billing records, the time spent by the firms that worked on this matter for the class through June 15, 2019 was as follows:

| Firm | Hours | Value |
|------|-------|-------|
| DiCello Levitt & Gutzler | 1,658.9 | $1,132,562 |
| Doffermyre Shields Canfield & Knowles | 733.7 | $ 710,400 |
| Law Offices of Jonathan Palmer | 265.1 | $ 132,550 |
| Buckner+Miles | 23.7 | $ 18,960 |
| TOTAL | 2,681.40 | $1,994,472 |

This time was all reasonably and necessarily spent in prosecuting the claims.  The billing rates of the specific lawyers and paralegals at each firm who have worked on this matter are as follows:

| Timekeeper | Rate |
|---|---|
| DiCello Levitt & Gutzler[1] | |
| Adam Levitt (partner) | $985 |
| Amy Keller (partner) | $750 |
| Mark DiCello (partner) | $985 |
| Laura Reasons (senior counsel) | $680 |
| Adam Prom (associate) | $500 |
| Audree Lebdjiri (paralegal) | $300 |
| Casey Edwards (paralegal) | $325 |
| | |
| Doffermyre Shields Canfield & Knowles | |
| Ken Canfield | $1000 |
| Jonathan Palmer | $500 |
| | |
| Law Offices of Jonathan Palmer | |
| Jonathan Palmer | $500 |
| | |
| Buckner+Miles | |
| David Buckner | $800 |

These hourly rates are reasonable and consistent with rates that are reported in analogous litigation.

(21)   We estimate that we will also spend an additional 300 hours having a value of roughly $255,000 on this matter before the settlement is consummated. As noted above, this future work will include filing final approval papers, dealing with any objections and appeals, coordinating with the settlement administrator and defense counsel to oversee the claims process, answering questions from class

---

[1] Further information about the lawyers at DiCello Levitt & Gutzler other than Mr. Levitt and Ms. Keller is contained in the firm's profile, which was submitted as an exhibit to our prior declaration.  [Doc. No. 127-4 at 20-34]

11

members, monitoring the claims response, sending reminder notices to those who have not yet filed claims, communicating with any state attorneys general who request more information, and other matters. The value of the time that we have already spent and expect to spend in the future is approximately $2,250,000.

(22)   Class Counsel seek to be reimbursed for our expenses expended on behalf of the class. Attached to this declaration as Exhibit A is a breakdown of the expenses by firm and by type. The expenses were necessarily and reasonably incurred in prosecuting the case; are consistent with what are expected in a case of this complexity and magnitude; were overwhelmingly paid to experts, court reporters, and travel; and do not include items typically billed by many lawyers, such as postage, in-house copying, computerized legal research and long distance telephone calls.

(23)   We believe that the service awards totaling $10,000 that Plaintiffs are requesting – $5,000 to T.S. Kao, Inc. d/b/a Lucky 7 Chinese Food and $5,000 to the owner of The Dinner Bell Café, Inc., Bill's Pizza Palm Springs, and Bill's Grill 1, LLC – are appropriate, reasonable, and justified. Not only did the class representatives devote substantial time to this litigation (such as by producing documents, submitting for depositions, and otherwise participating in the prosecution of this case), they exposed themselves to substantial risk that they

could have been held liable for the defense legal fees and expenses, regardless of the outcome, if provisions in their merchant agreements were enforced.  But for the class representatives' service and willingness to bear this risk, other class members would have received nothing.

(24)   We declare under penalty of perjury that the information set forth above is true and correct to the best of our knowledge and belief.

Dated:  June 21, 2019

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield


*/s/ Adam J. Levitt*
Adam J. Levitt

## EXHIBIT A TO SUPPLEMENTAL JOINT
## <u>DECLARATION OF KENNETH CANFIELD AND ADAM LEVITT</u>

At the beginning of the litigation, Class Counsel agreed to establish a litigation fund to pay for the "common expenses" incurred in prosecuting the case. Common expenses include such items as expert witness fees, court reporting services, and mediator costs.  Class Counsel made contributions to the litigation fund as directed by Mr. Canfield and Mr. Levitt in amounts they determined, with co-lead counsel contributing substantially more and the other firms substantially less.  "Individual" expenses – that is, expenses incurred by individual firms, such as travel, Pacer fees, and bulk copying done by outside providers – were borne by each firm.

The bulk of the expenses to date -- $399,952.30 -- have been paid from the litigation fund.  The individual expenses incurred by each firm total $28,138.48.  In addition, Class Counsel anticipate incurring future expenses of approximately $10,000 in connection with travel to the final approval hearing and additional expert services.   The total of the foregoing expenses is $438,090.78.   Class Counsel will submit an updated itemization before the final approval hearing.

The expenses paid from the litigation fund from its inception through June 15, 2019 are described in more detail below and are organized into appropriate categories:

1

| | |
|---|---|
| Expert witness fees | $325,216.98 |
| Investigative services | 22,747.30 |
| Mediation fees | 8,361.23 |
| Court reporting/<br>        deposition fees | 29,330.60 |
| Document hosting platform | 5,135.04 |
| Miscellaneous | 9,161.15 |
| | |
| TOTAL | $399,952.30 |

The individual expenses incurred by each firm included travel, court filing and service fees, delivery fees, document platform hosting fees, and Pacer fees.  All expenses are supported by appropriate documentation.