# EXHIBIT 3

# Declaration of Michael Bowers

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| T.S. KAO, INC. d/b/a LUCKY 7 CHINESE FOOD, THE DINNER BELL CAFÉ, INC., BILL'S PIZZA PALM SPRINGS, and BILL'S GRILL 1 LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH AMERICAN BANCARD, LLC, and GLOBAL PAYMENTS DIRECT, INC.<br><br>Defendants. | Case No. 1:16-CV-04219-SCJ<br><br>(Consolidated with Case No. 1:15-CV-03059-SCJ) |

## DECLARATION OF MICHAEL J. BOWERS
## IN SUPPORT OF PLAINTIFFS' FEE APPLICATION

Pursuant to 28 U.S.C. § 1746, I, Michael J. Bowers, hereby declare as follows:

1.

I am an attorney licensed to practice law in the State of Georgia, and an active member in good standing with the State Bar of Georgia since 1974. I am

admitted to practice before the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the District Courts in Georgia.

2.

I am a 1974 graduate of the University of Georgia School of Law.  I began my law practice as an Assistant Attorney General for the State of Georgia from 1974 through 1981.  From August 1981 through June of 1997, I served as Attorney General for the State of Georgia.  Since September 1998, I have continuously engaged in the private practice of law in Atlanta, Georgia.  I am currently a partner at the law firm of Balch & Bingham LLP in Atlanta.

3.

My law practice is devoted exclusively to trial and appellate litigation and dispute resolution, with an emphasis on business litigation, civil rights litigation, and litigation involving state and local governments.  I am honored to have an "AV" rating from Martindale-Hubbell and have been recognized through peer review and client review processes for inclusion in Woodward/Whites "Best Lawyers in America," Chambers & Partners USA "Leaders in Their Field" (Litigation), Law & Politics/Atlanta Magazine's "Georgia Super Lawyers," and Georgia Trend's "Legal Elite."  From 2003 through 2011, I served as Chairman of Georgia's Judicial Nominating Committee and have been recognized with

numerous awards, including the State Bar of Georgia's Traditions in Excellence Award and the Atlanta Bar Association's Leadership Award.

4.

I am familiar with the economics of law practice, billing practice, the cost and expenses of litigation, and the setting and collection of legal fees in a variety of circumstances. This includes cases comparable to this one. I have personal experience negotiating fee agreements with sophisticated consumers of legal services, billing and collecting fees and expenses from clients or adverse parties, and regularly represent plaintiffs and defendants on an hourly rate basis as well as based on contingent fee or hybrid hourly/contingent fee arrangements. I am also familiar with hourly rates in Atlanta through my management responsibilities at my law firm, my extensive mediation practice, and experience supervising numerous other lawyers and law firms.

5.

I am providing this declaration at the request of counsel for the plaintiffs in this action, who asked me to review the record of the litigation and give them my opinion regarding whether the amount of the fees and expenses provided in the settlement agreement was fair and reasonable.

6.

To prepare to render my opinion, I have done the following:

(a)     I reviewed the docket sheets and approximately 40 pleadings, briefing, and orders from the *Lucky 7* and *Dinner Bell* actions, including without limitation the complaints and consolidated amended complaint; the briefing on the substantive motions such as defendants' motion to dismiss and motion for judgment on the pleadings; the settlement agreement and exhibits to the settlement agreement; the motion to direct notice of the settlement to the class and supporting brief and exhibits; and a draft of class counsel's fee application and supplemental declaration;

(b)     I reviewed the significant documents relating to the mediation process, including the numerous mediation statements submitted by both sides;

(c)     I interviewed Mr. Canfield regarding the course of the litigation, the scope of the work, the risks undertaken, the results achieved, the reasons for the settlement, settlement negotiations, the terms of the settlement, and related matters;

(d)     I studied numerous decisions from the Eleventh Circuit and district courts in the Eleventh Circuit relating to the award of attorneys' fees and expenses in class actions;

(e)   I interviewed Ralph Levy, the mediator who presided over the settlement in this case, regarding the history of the settlement negotiations, his evaluation of the case, and the work of class counsel; and,

(f)   I reviewed the billing records relating to the work done by class counsel through May 15, 2019 and the expenses for which they seek reimbursement.

### 7.

I understand class counsels are requesting a fee of $5 million, which represents one-third of the settlement fund. It is my opinion that this requested fee is fair, reasonable, and consistent with the applicable law in the Eleventh Circuit, including specifically *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).

### 8.

Based on my experience, my extensive review of the record, and the other work I have done, it is my opinion that class counsel did an incredible job in a challenging case and that the settlement is a significant achievement for the class. This achievement is even more impressive when it is considered that the case was settled before the certification of a class, resolution of several difficult legal issues presented by defendants' motion for judgment on the pleadings, and a ruling on the

expected motion for summary judgment. The quality of class counsel's work, demonstrated in the results achieved for the class, justify the substantial, and in my view, well-earned fee that plaintiffs seek.

9.

To prevail in a case of this complexity and difficulty, class counsel were required to demonstrate, and they in fact demonstrated, a high degree of legal skill and competence.

10.

It also was necessary for class counsel to devote thousands of hours to effectively and successfully represent the class, including conducting extensive factual discovery. In my view, had class counsel not devoted such time and shown their willingness to continue doing so in the future, this case likely would not have settled, at least upon terms as favorable to the class.

11.

The nature of how defendants allegedly overcharged their customers were extremely difficult to determine and prove. To figure out defendants' billing practices, and uncover the details of defendants' allegedly fraudulent scheme took a massive amount of work and required the involvement of sophisticated experts. Only after the voluminous data relating to the charges defendants assessed during

the class period was produced, and analyzed, did class counsel truly understand the nature of what had occurred. To get to that point, the lawyers for the class had to devote a substantial amount of time drafting pleadings; researching the law; briefing issues like those relating to the class action waiver in defendants' form contracts and other restrictive provisions in the contracts, such as the 60 or 90 day notice requirement; exchanging documents and interrogatories; taking and defending depositions; and performing the other tasks that are part of any piece of complex litigation in federal court.

12.

The mediation process itself was difficult. Class counsel were required to spend hours and hours analyzing the materials and data defendants produced, working with their experts to evaluate the information they received, putting together an effective presentation about the damages at issue, and researching and drafting extensive mediation statements. The negotiations themselves were hard fought and conducted at arm's length, which Mr. Levy confirmed during our discussion.

13.

In taking this case based on a contingent fee, the lawyers for the class faced a substantial risk for which they would invest millions of dollars of their time

7

without receiving a fee. Many of the issues in this case were challenging and the legal precedent, as applied to the facts, was uncertain. Class counsel knew they would have to win on several issues that, if lost, likely would be fatal to the case. These issues included the class action waiver, the requirement in defendants' form contracts that merchants pay defendants' legal costs however the case came out, a statute of limitations as short as 60 days and a contractual limit on the damages that could be recovered. The need to win on class certification and summary judgment also substantially increased class counsel's risk.

14.

The risks actually increased after the case was filed. While class counsel were successful in convincing the court to reject defendants' argument that the class action waiver in the form agreements were unenforceable as a matter of law, plaintiffs still faced the prospect of proving unconscionability at trial, which was dependent on creating a factual record that turned out to be more difficult than expected. Further, after the case was filed, three federal courts, including two separate judges in the Northern District of Georgia, held that restrictive notice provisions of the sort contained in defendants' form contracts were, in fact, enforceable, rejecting arguments that the provisions were unconscionable. Moreover, discovery revealed that a number of key factual allegations upon which

plaintiffs' claims were based would be more difficult to prove than the lawyers for the class initially anticipated.

15.

Furthermore, because class counsel agreed to advance the necessary funds to finance the expenses of the litigation, they understood that if the case proved to be unsuccessful they would suffer a major financial loss out of their own pockets, a loss that might be a million dollars or more considering the need for expert assistance and the costs of analyzing large databases.

16.

The willingness of class counsel to undertake the risks of this case is deserving of a substantial fee, a fee that is much larger than they would have been able to get if they had invested their time in work on an hourly rate basis. Without the prospect of a sizeable premium to justify the risk, it would have made little financial sense for class counsel to take the case.

17.

Few plaintiffs' lawyers in Georgia have the experience and ability to successfully prosecute a class action of the nature and complexity of this one, the willingness to take the case on a contingent fee notwithstanding a substantial possibility the case could well be lost, and the means to finance potentially

millions of dollars in out of pocket expenses. The lawyers who do customarily charge a fee of one-third, or more, of any recovery in complex contingency fee litigation.

18.

The actions alleged to have been taken by defendants in this case are serious and, if true, needed to be redressed to protect merchants from such unfair and oppressive conduct. Our society is made better off if such actions are remedied, both to deter others from engaging in similar conduct and to compensate those who have been harmed. However, the economics of the practice of law are such that without a sizeable financial incentive lawyers will not take on the role of a "private attorney general" and the type of misconduct defendants were alleged to have engaged in here likely will not be rectified. Class counsel here ably filled the role of a private attorney general and should be appropriately rewarded for their efforts. Failure to do so will discourage lawyers from taking on similar litigation in the future and thus undercut the deterrent impact of our laws designed to protect the public from wrongdoing.

19.

Because this action caused the establishment of a common fund for the benefit of class members, according to the Eleventh Circuit, the fee should be

10

based on a percentage of the fund, reflecting a judgment that "the measure of the recovery is the best determinant of the reasonableness and quality of the time expended." *Camden I*, 946 F. 2d at 774.

## 20.

Following *Camden I*, courts have routinely awarded fees in common fund cases using percentages akin to the percentage sought here by class counsel. *See, e.g., Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) (affirming fee of one-third of a $40 million fund); *Wolff v. Cash 4 Titles*, 2012 WL 5290155 at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *Columbus Drywall,* 2012 WL 12540344 at *6 and n. 6 (awarding a one-third fee and listing other similar cases); *Smith v. Floor & Décor Outlets of Am., Inc.,* No. 1:15-cv-04316-ELR (N.D. Ga. Jan. 10, 2017) (awarding one-third of a $14 million settlement). Indeed, a one-third fee was recently approved in *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC,* 1:16-cv-00012-MHC (N.D. Ga. Aug. 31, 2017), a case very similar to this one. Empirical studies by academics further support that courts in the Eleventh Circuit routinely award a fee of one-third of a common fund. B. Fitzpatrick, *An Empirical Study of Class Action*

*Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010) (showing that during 2006 and 2007 the median fee in the 11th Circuit was 30 percent).

21.

In reaching my opinion that the fee requested by class counsel is reasonable, I have considered the factors in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974), which the Eleventh Circuit stated in *Camden I* "continue to be appropriately used in evaluating, setting, and reviewing percentage awards in common fund cases" *Camden I,* 946 F. 2d at 774, as well as the other factors that the Eleventh Circuit indicated in *Camden I* may be considered.  These factors include:

    a.  The time and labor required;

    b.  The novelty and difficulty of the question involved;

    c.  The skill required to perform the legal service properly;

    d.  The preclusion of other employment by the attorney as a consequence of his involvement in the case;

    e.  The customary fees;

    f.  Whether the fee is fixed or contingent;

    g.  Time limitations imposed by the client or the circumstances;

    h.  The amount involved and the results obtained;

    i.  The experience, ability, and reputation of the attorney;

j.  The "undesirability" of the case;

k.  The time required to reach settlement;

l.  Fee awards in similar cases;

m. The nature and length of the relationship with the client;

n.  Whether there are substantial objections by class members or other parties to the settlement terms or the fees requested;

o.  Any non-monetary benefits conferred on the class by the settlement;

p.  The economics of prosecuting a class action; and

q.  Additional unique factors.

22.

In my opinion, the *Johnson* factors discussed below support and justify the requested fee of one-third of the common fund.  None of the *Johnson* factors support or justify a lower fee.

**(a)   The time and labor required.**

This matter, a class action involving claims on behalf of over 300,000 class merchants around the country who processed hundreds of millions of credit and debit card transactions with defendants over a period of nearly ten years obviously is factually, legally and logistically complex.  The payment card industry, the processing of payment card transactions, and the manner in which merchants are

13

charged for such transactions are inherently complicated, requiring the use of a variety of experts and the analysis of voluminous data to understand what happened in this case. Further, discovery in this case was robust and extensive legal research and briefing was required. The case was aggressively defended by very competent counsel from one of Atlanta's leading defense firms.

The detailed time records of class counsel that I have reviewed show that the lawyers for the class already have spent more than 2,500 hours prosecuting this case and class counsel estimate that they will spend a total of approximately 3,000 hours before its conclusion. This time, in my opinion, is reasonably necessary to prosecute plaintiffs' claims and is consistent with what I would expect to see given my review of the record and class counsel's work product, particularly given the aggressive way in which the case was defended.

### (b)     The novelty and difficulty of the questions involved.

According to the lawyers for the class, this case is the first class action to challenge the inflation of fees and imposition of alleged junk fees charged to merchants by a payment card processor. As such, by definition, the case and many of the factual and legal issues that it raised was novel. For example, the case raised numerous novel and difficult legal issues that had not previously been resolved, including the enforceability of provisions in defendants' form contracts governing

14

fees in any disputes between the parties, waiving class actions, imposing a 60 or 90 day notice requirement, and limiting damages. And, as I have discussed above, these issues arose in an unusually complex factual setting.

**(c)** **The skill required to properly perform the legal service.**

Due to the complexity of the issues described above, this case required experienced and highly skilled class counsel, with the expertise to address these factual and legal issues and to manage a class of hundreds of thousands of members. As I noted above, there are few lawyers in Georgia who had the skill, experience, and willingness to have handled this case for the plaintiff class.

**(d)** **The experience, ability and reputation of the attorneys.**

I have reviewed the declarations of class counsel setting out the experience of their team members. Based on this review and a review of their work product and the result obtained for the class in the settlement agreement, I believe class counsel exhibited a very high level of experience and ability. I am also personally familiar with Ken Canfield and other lawyers at his firm and attest that they have a fine reputation, particularly for their skill in complex class actions such as this one. I am also very familiar with the lead opposing attorney, Rob Remar. I have worked with him and against him over the past 40 years. He is a superb lawyer

15

and tough as nails, only someone like Mr. Canfield and his co-counsel could stand to-to-toe with this fine lawyer.

### (e)  **Whether the fee is fixed or contingent.**

The lawyers for the class undertook this litigation entirely on a contingent basis and have received nothing to date for their services on behalf of the class. The lawyers have devoted thousands of hours to this action and have incurred hundreds of thousands of dollars in expenses, which they have paid out of pocket with no assurance that they would be reimbursed.  Both public policy and class action jurisprudence favor awarding fees to attorneys who right wrongs through costly and complex contingent litigation.

### (f)  **The Customary Fee**

It is customary that fees in a contingent matter are one-third of the recovery, if not higher.  In fact, in particularly complex contingent fee matters, such as medical malpractice litigation, contingent fees typically are 40 percent of the recovery, reflecting the larger amount of time and expense – and thus the risk – involved.   This case was much more complex and riskier than the typical contingent fee matter or medical malpractice case.  As a result, this factor supports a fee of at least one-third of the amount recovered.

### (g)   The amount involved and the results obtained.

Class counsel obtained a very substantial recovery under difficult circumstances, namely $15 million in cash, significant business practice changes that will allow class members to terminate their relationship with North American Bancard (NAB) if fees are increased or added in the future, and a release from certain claims that NAB might have against them.  The Court in the *Mercury* case involving similar allegations against payment processors awarded a fee of one-third of the fund in connection with a settlement that recovered between 25 and 50 percent of the potential damages at issue.  Class counsel report they recovered for the class between 16 and 40 percent of the recoverable damages in this case and that this case involves significantly greater risks than they faced in the *Mercury*. These results, in my opinion, justify a fee of one-third of the settlement fund. Indeed, in my opinion, a one-third fee would be justified even if the recovery were at the lower end of the estimated range.  *See, e.g., Sims v. BB&T Corp.*, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) (approving a one-third fee where class counsel recovered 19 percent of the recoverable damages as well as valuable non-monetary relief for the class).

**(h)     Fee awards in similar cases.**

I have described above that in similar cases courts in the Eleventh Circuit routinely award one-third of the common fund.  Indeed, the court awarded a one-third fee in the *Mercury*, which is quite similar to this one in terms of the factual and legal allegations involved and shares a common defendant.  This factor thus supports a one-third fee here.

**(i)     The economics of prosecuting a class action.**

Here, class counsel had to invest a substantial amount of time and money over an extended period, with a long delay in obtaining a recovery of that investment, and indeed with no guarantee of ever recouping that investment.  To incentivize counsel to undertake a case of this magnitude against experienced and well-paid defense counsel, the fee award must represent a sufficient premium over the time value of the work invested to justify the economic risks faced by class counsel.  As I discussed above, without such a premium the economics of the practice of law will preclude good lawyers from pursuing cases such as this one and leave our society worse off.

**(j)     Any non-monetary benefits conferred on the class.**

The settlement provides significant non-monetary benefits to the class. NAB has agreed to the following business practice changes for at least five years:

18

(1) before raising or adding fees, NAB will notify customers at least 30 days in advance; (2) affected class members will have 45 days from the date of the change to terminate their merchant agreements without incurring a substantial early termination penalty; (3) NAB will waive contractual requirements that class members pay its fees and costs in any dispute they win; and (4) in the future, the prevailing party in any dispute (whether NAB or a class member) will be entitled to fees and expenses. NAB will also release class members from potential claims arising out of its business relationship with them. Under *Camden I*, these substantial non-monetary benefits justify a higher fee and thus further support class counsel's request for a fee of one-third of the common fund.

23.

The Eleventh Circuit authorizes district courts to use a lodestar analysis as a cross-check in common benefit cases. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d at 1298. If one examines class counsel's request under the lodestar approach, I believe the requested attorneys' fee is also reasonable. Class counsel report they have spent or will spend in the future roughly than 3,000 hours. Multiplied by their hourly rates, which I believe are reasonable and appropriate to the experience of the attorneys performing the work in a case of this complexity and especially when taking into account the risk of non-payment, class counsel's lodestar exceeds

$2,250,000. The requested fee would produce a lodestar multiplier of 2.2. This is well within the range of multipliers approved by district courts in this Circuit. *See, e.g., Columbus Drywall*, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008) ("Multipliers of three and higher appear to be common."); *Pinto v. Princes Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) ("in large and complicated class actions [multipliers range from 2.26 to 4.5 while three appears to be the average"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (multipliers range from less than two to more than five).

24.

I have reviewed the expenses incurred by class counsel in Exhibit A to the Supplemental Joint Declaration of Ken Canfield and Adam Levitt, which total roughly $430,000. These expenses -- the overwhelming bulk of which were paid to experts and other professionals -- appear to be reasonably incurred in connection with the case. I understand that class counsel expect to incur an additional $10,000 or so in expenses before the conclusion of this litigation. Based on my experience in cases of this size and complexity, I believe the aggregate reimbursement of expenses class counsels are requesting in this case is reasonable. I understand that class counsel is not seeking to be reimbursed for expenses typically billed by many lawyers, such as in-house copying, computerized legal research, and long distance

telephone calls. Based upon my experience, expenses of this amount are consistent with what I would expect to see in a case of this magnitude and complexity.

25.

I am now in my 46th year of practicing law. I have been blessed to work with and against extraordinarily talented lawyers during that time. I have participated personally, and in overseeing and reviewing hundreds, perhaps thousands of cases, ranging in complexity and competitiveness from the constitutionality of all of Georgia's congressional districts, the constitutionality of a State Supreme Court appointment, the legality of the funding of the entire State public school system, to the appeals of fishing licenses. This case is up at the top rung of complexity and competiveness that I have ever seen. It took some real work of genius to unravel and perhaps, more importantly daring and organizational skill to attempt it in the first place. To bring it to the successful conclusion we see today is just plain amazing. I believe that deserves substantial rewarding.

26.

I declare under penalty of perjury that the foregoing is true and correct.

This _8th_ day of June, 2019.

Michael J. Bowers

Michael J. Bowers

21