# EXHIBIT 4

# Declaration of Hunter Hughes in *Mercury*

Plaintiffs' Motion for Attorneys' Fees,
Expenses, and Service Awards
to the Class Representatives

# Exhibit 1

**Declaration of Hunter Hughes**

*Champs Sports Bar & Grill, Co., et al.*
*v. Mercury Payment Systems, LLC, et al.*
U.S.D.C., N.D. Ga., Atlanta Division
Case No. 1:16-cv-00012-MHC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHAMPS SPORTS BAR & GRILL CO., FASHIONADVICE.COM, LLC d/b/a SAM MALOUF, ARCHER'S BARBEQUE, LLC, and WOKCHOW DEVELOPMENT, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERCURY PAYMENT SYSTEMS, LLC and GLOBAL PAYMENTS DIRECT, INC.,<br><br>Defendants. | Case No. 1:16-CV-00012-MHC |

## DECLARATION OF HUNTER HUGHES

1. My name is Hunter Hughes. After practicing law for more than 40 years, I now primarily work as a mediator, arbitrator, and special master. While my principle office is in Atlanta, my practice as a neutral extends to cases pending across the United States.

2. The parties to this action retained me to serve as a mediator and, with my help, resolved their dispute. At the request of Plaintiffs' counsel, and with

Defendants' counsel's consent, I submit this declaration in support of class counsel's application for an award of attorneys' fees. I have not received any compensation for providing this declaration. The only compensation I have received is for my service as a mediator in the action, which was shared equally by the parties.

3. After receiving my B.A. and J.D. degrees with honors from the University of Virginia, I moved to Atlanta and began practicing law. I was admitted to the Georgia Bar in December 1970 and have been continuously licensed to practice law in the State of Georgia since that time. For almost forty years, I was a partner at Rogers & Hardin, where my focus was employment litigation. I was lead trial counsel in hundreds of cases, including nationwide class and mass actions, and lead counsel in arbitrations and numerous proceedings before state and federal agencies. Over the last 20 years, I developed a specialty in mediating cases at the request of Courts and other lawyers, particularly class actions and mass actions. In 2015, I left Rogers & Hardin to become a full-time neutral.

4. I have served as a neutral in hundreds of national class, collective, and mass actions (including mediating the Morgan Stanley, Smith Barney, FedEx, Abercrombie, Viacom, Disney, NBC, Time Warner, Coca-Cola, Home Depot,

Publix, Boeing, Wal-Mart, Dell, Xerox, Lowe's, Cigna, Lockheed, Credit Suisse, Mutual of Omaha, General Dynamics, Boeing, Bechtel, Intrawest, AXA, and All Scripts class and/or collective action cases).

5. I am a Distinguished Fellow in the American College of Civil Trial Mediators and have been selected for inclusion in multiple editions of Woodward/White's "Best Lawyers in America," Chambers' USA "America's Leading Lawyers for Business," "Who's Who in American Law, Law & Politics," Atlanta Magazine's Top 10 and Top 100 "Georgia Super Lawyers Top 10 and Top 100," and Georgia Trend's "Legal Elite." I am also past Chairman and Vice Chairman of the EEO Committee Administrative Section of the American Bar Association and a past President of the Corporate Counsel Section of the Atlanta Bar Association.

6. I am an Adjunct Professor at the University of Virginia Law School, where I teach a course on negotiation, and have been a speaker throughout the country at several hundred seminars and conferences on various topics, including trial practice, alternate dispute resolution, settlement strategies, damages, and negotiations skills.

7. I have written numerous articles and publications, including "How Our Subconscious Bias Impacts Negotiations" in the *American Journal of*

3

*Mediation*; Chapter 26, "Mediating Class Actions: How Mediators Operate and What They Want," in *How ADR Works* (BNA Books); and "Class Actions in Arbitrations," a treatise project of the American Bar Association Labor and Employment Law Section.

8. The settlement in this action was achieved through extensive arms' length negotiations among the parties over many months and was not the product of collusion. To the contrary, the negotiations were highly contested and hard fought and required my active and continuing involvement to bring the negotiations to fruition. At several points, the negotiations came very close to impasse. The settlement was achieved only after I made a "mediator's proposal" on the monetary aspects of the settlement and gave each side a deadline to either accept or reject it; and if rejected, I would declare the negotiations at impasse.

9. Class counsel were scrupulous in avoiding discussion of the amount and did not negotiate or reach agreement on the amount of attorneys' fees, litigation expenses, notice and administration costs, and incentive awards to the named plaintiffs until the major terms of the settlement had been resolved.

10. I estimate I have mediated several hundred class action settlements that have addressed the amount of fees class counsel would receive. As a result of my work as a practicing lawyer and as a mediator, I am familiar with a large

4

number of attorneys' fees awards in the Eleventh Circuit as well as other circuits. In my experience, the overwhelming number of class action settlements that I have mediated in the Eleventh Circuit where the fee was based on a common fund approach have provided for fees of one-third of the class settlement fund. Indeed, my best estimate is that more than 90 percent of such settlements I have mediated in the Eleventh Circuit have provided for fees of approximately one-third of the class fund. The remaining common fund cases have had fee awards as high as 40% of the fund down to approximately 25 percent.

11. The amount of fees that class counsel seek here – one-third of the $52 million settlement fund – is consistent with results of the other class and collective action settlements that I have mediated. In fact, measured as a percentage of the benefit to the class, class counsel's fee request is potentially lower as the class benefit in this case includes both the cash payments for which current and former customers are eligible and the credit option of twice the value of the cash payment that current customers are entitled to choose in lieu of cash. I am informed that the experts chosen by the parties to calculate the settlement benefits have determined that the cash payable to current customers exceeds $20,000,000, thus rendering the value of the credit option to be in excess of $40,000,000. Using these figures, the total class benefit of the settlement could be as high as approximately $72 million.

12. I also note that no effort has been made by class counsel to quantify Defendants' the dollar value attributable to practice changes adopted by the Defendant during the litigation, which I am advised have lowered ongoing fees to the members of the class.

13. I declare under penalty of perjury that the facts set out in this declaration are true to the best of my knowledge and belief.

June 29 2017
Date

Hunter Hughes